PAINE et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit.
August 3, 1925.)

No. 4576.

1. Criminal law ⟲369(1) — Ordinarily, evidence of similar offense is not admissible to prove offense charged.

Ordinarily, evidence of commission by accused of offense similar to that charged is not admissible to prove offense charged.

2. Criminal law ⟲371(12) — Evidence of crooked card game six months prior to one on which larceny charge founded, admissible.

In prosecution for larceny by cheating in a card game, evidence of a similar game six months prior thereto, in which one of accused participated, held admissible as against that participant to prove a fraudulent motive prompting conduct charged.

3. Criminal law ⟲370 — Testimony of police officer as to crooked card game in which accused participated admissible.

In prosecution for larceny by cheating in a card game, testimony of police officer that a week prior to offense charged he had been called into room in which the three defendants were playing a similar card game and were charged with cheating, held admissible, especially to rebut claim of defendants that they were strangers to each other.

4. Witnesses ⟲337(4)—Cross-examination of accused as to going under various assumed names and having been in jail not error.

In prosecution for larceny by cheating in card game, where accused had testified concerning his activities since his discharge from Canadian army and places he had worked in California, cross-examination as to whether he had not gone under various assumed names and been in jail for certain period held not error.

5. Criminal law ⟲1044—Evidence not reviewed in absence of motion for directed verdict except to prevent plain miscarriage of justice.

In absence of motion for directed verdict at close of all the testimony, Court of Appeals will not review the evidence to determine whether it supports the verdict, except to see that there has been no plain or palpable miscarriage of justice.

6. Larceny ⟲62(1)—Conviction for larceny in cheating at cards not miscarriage of justice.

In prosecution for larceny by cheating at cards, although testimony as to exact means employed was somewhat vague and indefinite, conviction held not a miscarriage of justice under all the circumstances.

In Error to the District Court of the United States for the Southern Division of the Northern District of California; Adolphus F. St. Sure, Judge.

Jerry Paine and others were convicted of larceny, and they bring error. Affirmed.

Ernest Pagnuelo, of San Francisco, Cal. (Marshall B. Woodworth, of San Francisco, Cal., of counsel), for plaintiffs in error.

Sterling Carr, U. S. Atty., and James D. Whalen, Asst. U. S. Atty., both of San Francisco, Cal.

Before HUNT, RUDKIN, and McCAMANT, Circuit Judges.

RUDKIN, Circuit Judge. The present writs of error were sued out to review a

judgment of conviction of the crime of larceny. The indictment charged that the three plaintiffs in error did unlawfully, willfully, knowingly, and feloniously take and carry away, with intent to commit larceny, to wit, to steal and purloin, certain personal property of the prosecuting witness consisting of $75 in lawful money of the United States, certain traveler's checks of the value of $230, and the personal check of the prosecuting witness of the value of $203. The money and property in question were lost by the prosecuting witness in a game of cards. The court instructed the jury that larceny may be committed by any willful trick or device, or by the stacking of cards, or by other act or acts by which the element of chance in a game of cards is eliminated, if by reason of such skillfulness or such willful elimination of chance by defendants the complainant is deprived of his money or other thing of value. Upon this theory the case was tried and submitted to the jury.

The testimony on the part of the government tended to show that the prosecuting witness became a passenger at Los Angeles on the steamship Ruth Alexander, plying between San Diego, Cal., and Seattle, Wash.; that soon after entering his stateroom he met one of the plaintiffs in error; that the latter told him that he met a man on the electric train while coming to the dock; and that he saw the same man on board and was invited by him to have a drink, and the prosecuting witness was invited to join them. The prosecuting witness accepted the invitation and joined the other parties later, and their meeting resulted in the game of cards at which the prosecuting witness lost his money and property. According to his testimony, four hands in all were played, the first two for trifling stakes represented by matches. On the third hand the prosecuting witness won $50 or $75, but on the fourth and last hand he lost his money and checks. It must be conceded at the outstart that the prosecuting witness had rather a vague and indefinite idea as to how he was swindled, if swindled at all, and the irregularities in the game as detailed by him would not seem to be of grave or controlling importance. The assignments of error challenge certain rulings admitting testimony over objection and the sufficiency of the testimony to support the verdict.

[1, 2] We will consider briefly these several rulings in the order in which they occurred at the trial. The government offered testimony tending to show that a passenger on the steamship Harvard, plying between Los Angeles and San Francisco, was swindled in a game of cards in a somewhat similar manner about six months before, and that one of the plaintiffs in error was a party to the swindle. The admission of this testimony is assigned as error. It is no doubt the general rule that evidence of the commission by a defendant of an offense similar to that for the commission of which he is on trial is not admissible to prove his commission of the latter offense. But there is a well-recognized exception to this rule in the case of fraud. In Butler v. Watkins, 13 Wall. 456, 20 L. Ed. 629, the court said:

"In actions for fraud, large latitude is always given to the admission of evidence. If a motive exist prompting to a particular line of conduct, and it be shown that in pursuing that line a defendant has deceived and defrauded one person, it may justly be inferred that similar conduct towards another, at or about the same time and in relation to a like subject, was actuated by the same spirit."

Again, in N. Y. Mut. Life Ins. Co. v. Armstrong, 117 U. S. 591, 598, 6 S. Ct. 877, 880, 29 L. Ed. 997, the same court said:

"The theory of the defense is that the purpose of Hunter in obtaining the insurance was to cheat and defraud the company. In support of that position evidence that he effected insurances upon the life of Armstrong in other companies at or about the same time, for a like fraudulent purpose, was admissible. A repetition of acts of the same character naturally indicates the same purpose in all of them; and if when considered together they cannot be reasonably explained without ascribing a particular motive to the perpetrator, such motive will be considered as prompting each act."

In Yakima Valley Bank v. McAllister, 37 Wash. 566, 79 P. 1119, 1 L. R. A. (N. S.) 1075, 107 Am. St. Rep. 823, an indorsement on a promissory note was obtained by certain insurance agents by some trick or device, and evidence tending to show that indorsements on other notes were obtained in a similar manner from other persons, by the same agents, at or about the same time, was held competent, the court saying:

"And so, in this case, the testimony, if true, showed conclusively a general scheme to perpetrate this particular kind of a fraud upon the people of a certain neighborhood at the same time, for the purpose of selling them insurance policies."

Sufficient similarity between the two games was disclosed to justify the admission of testimony as to the former. The time elapsing between the games was, no doubt, considerable, but one who cheats at cards does not mend his ways over night, and we cannot say that in admitting the testimony the court below abused the broad discretion vested in it by law. Of course, the testimony was only admissible as against the party who participated in the former game, but the objection interposed was a general one on behalf of all the plaintiffs in error, and the court was not requested to limit its consideration to any particular party, either at the time of its admission or at a later stage of the trial.

[3] A police officer of the Southern Pacific Company testified that about a week before the incident now in question he was called into the drawing room of a Pullman car of the Southern Pacific Company at San Luis Obispo, where a passenger claimed that he had been led into a poker game by the plaintiffs in error and was euchered out of the sum of $87. The testimony as to this incident is also somewhat vague, as the injured party was not a witness at the trial, but it does appear from the testimony that one of the plaintiffs in error refunded the sum of $50 to the party from whom the money was taken or won. There is some claim that this was a dice game and not a poker game, but the officer testified that the plaintiffs in error admitted in his presence that it was in fact a game of poker. This testimony was competent for the reasons already stated, and for the further reason that it tended to show that the three plaintiffs in error were not strangers to each other, as they represented themselves to be.

[4] On cross-examination, one of the plaintiffs in error was asked whether he had not gone under various assumed names, whether he had not been in jail for a certain period, and other questions of like import. Error is assigned in the admission of this testimony. We are not unmindful of the fact that attempts are too often made to convict persons of crime by showing that they had been arrested on some previous occasion, that they had been confined in jail, or that they had committed some other offense having no connection with or relation to the crime for which they are on trial. Such testimony, if improperly admitted, is universally conceded to be extremely prejudicial, and we have no desire to relax or qualify the rule of exclusion, but we

think the witness in this case laid a foundation for the cross-examination complained of, by his direct examination. In his examination in chief, he testified that he was a volunteer in the Canadian army; that he served throughout the period of the World War; that he was eighteen months over seas; that he was discharged from the army in May, 1919, in Canada; that his father is a prominent official in that country; that he had followed the occupation of steward since leaving the army; that he had worked in every power project plant in the state of California, naming a number of them; that he had an affidavit by these people; and that this was his only recommendation from the camps in which he worked. We think this testimony was a sufficient warrant for the cross-examination complained of. As said by the court in State v. Melvern, 32 Wash. 7, 26, 72 P. 489, 495:

"It appears from the record that the appellant, in his examination in chief, gave testimony as to his life, occupation, and habits at the various places where he had resided from the time of his childhood down to the date mentioned in the information. He thus laid the foundation for cross-examination upon matters which, in the absence of such testimony, might possibly have been deemed immaterial and irrelevant."

[5, 6] Lastly, it is contended that the testimony does not support the verdict and judgment, and in this connection it is asserted that there was a motion for a directed verdict at the close of all the testimony. As to this, counsel is in error. The record discloses no such motion or request, and, in the absence of such, we have repeatedly held that this court will not examine or review the testimony, except in so far as to see that there has been no plain or palpable miscarriage of justice. We have examined the record with that end in view, and while, as already stated, the testimony is somewhat vague and indefinite as to the exact means employed by the plaintiffs in error to defraud the prosecuting witness, when we consider the circumstances under which the parties met, the manner in which the game was played and conducted, the admissions of one or other of the parties at different times to different persons, the other games in which the same parties were implicated, and all the surrounding circumstances, we are far from convinced that there has been any miscarriage of justice here.

The judgment is therefore affirmed.