### JOHNSTON v. UNITED STATES.

Circuit Court of Appeals, Ninth Circuit.
October 24, 1927.

Rehearing Denied November 28, 1927.

No. 4989.

**1. Indictment and information ⊜71—Indictment charging receiving currency stolen from mails held sufficiently definite and certain, though not alleging ownership of money or name of person from whom defendant received it (Penal Code, § 194 [18 USCA § 317]).**

Indictment charging defendant with receiving and having in possession, in violation of Penal Code, § 194 (18 USCA § 317), sum of $2,000 in United States currency, to wit, 100 $20 bills of paper currency of United States, a more particular description being to grand jurors unknown, which currency had been stolen by another from mail pouch, *held* not subject to objection that it was indefinite and uncertain, because not stating name of person from whom defendant received money, circumstances under which it was received, or ownership of money, and because it did not contain sufficient description thereof.

**2. Criminal law ⊜1169(5)—In prosecution for receiving money stolen from mails, admitting copies of indictments against thief held harmless, in view of court's remarks (Penal Code, § 194 [18 USCA § 317]).**

In prosecution for receiving money stolen from mails, in violation of Penal Code, § 194 (18 USCA § 317), admitting in evidence certified copies of indictments against one who had stolen money from mail pouch merely for circumstantial purposes, and not to prove that money alleged to have been received by defendant had theretofore been stolen from mails, if error, *held* harmless.

**3. Criminal law ⊜369(2)—Relevant evidence is not inadmissible because it proves another distinct offense.**

Evidence which is relevant is not rendered inadmissible because it proves or tends to prove another and distinct offense.

**4. Criminal law ⊜370—In prosecution for receiving money, stolen from mails evidence of previous transaction between parties held ad-**
22 F.(2d)—1

missible to show guilty knowledge (Penal Code, § 194 [18 USCA § 317]).

In prosecution for receiving $2,000 in currency, which had been stolen from mails, in violation of Penal Code, § 194 (18 USCA § 317), evidence of previous transaction, whereby defendant received $400 from same parties, *held* so closely connected with matter under investigation as to be admissible to show whether defendant, when he received the $2,000, knew that it had been stolen from mails.

**5. Criminal law ⊜338(1)—Evidence is not inadmissible because jury may have found in favor of government without it.**

Evidence is not inadmissible in criminal case because jury may have found in favor of government without it.

**6. Criminal law ⊜1038(1)—Instruction held not subject to complaint on appeal, where not objected to (Penal Code, § 194 [18 USCA § 317]).**

In prosecution for receiving money stolen from mails, in violation of Penal Code, § 194 (18 USCA § 317), instruction regarding consideration to be given evidence of previous transaction to show guilty knowledge *held* not subject to complaint on appeal, where no exception was taken to instruction as given or any part thereof.

**7. Criminal law ⊜341—Evidence of previous conduct and relations of defendant and another held admissible to show conduct and relations at time it was claimed defendant received money stolen from mails (Penal Code, § 194 [18 USCA § 317]).**

In prosecution for receiving money stolen from mails, in violation of Penal Code, § 194 (18 USCA § 317), evidence that license for automobile, in which defendant and another went to K., where money was alleged to have been received, was issued to defendant, and that a few days previously J., under assumed name, received license for same car, and that defendant and J. occupied rooms at hotel under assumed names, *held* competent as showing conduct and relations of defendant and J. on their visit to K. at time it was claimed defendant received stolen money, and whether it was for honest purpose of searching for stolen bonds, with intention of returning them to owner, as claimed by defendant.

**8. Post office ⬤50—Whether money received by defendant was stolen from the mails while in course of regular mail transportation held for jury (Penal Code, § 194 [18 USCA § 317]).**

In prosecution for receiving money, which had been stolen from mails, in violation of Penal Code, § 194 (18 USCA § 317), in which defendant claimed there was no evidence that money alleged to have been received was in fact stolen by H. While in course of regular mail transportation, evidence *held* for jury.

In Error to the District Court of the United States for the Northern Division of the District of Idaho; Frank S. Dietrich, Judge.

George Lee Johnston was convicted for violation of Penal Code, § 194, and he brings error. Affirmed.

See, also, 292 F. 491.

W. G. McLaren and G. F. Vanderveer, both of Seattle, Wash., and N. D. Wernette, of Cœur d'Alene, Idaho, for plaintiff in error.

H. E. Ray, U. S. Atty., and Sam S. Griffin and W. H. Langroise, Asst. U. S. Attys., all of Boise, Idaho, and E. G. Davis, Sp. Asst. Atty. Gen., for the United States.

Before HUNT and RUDKIN, Circuit Judges, and BEAN, District Judge.

BEAN, District Judge. The defendant was indicted, tried, and convicted for a violation of section 194 of the Penal Code (18 USCA § 317), and from the judgment which followed brings this appeal.

The alleged errors discussed at the argument and in the briefs consist in the overruling of a demurrer to the indictment, the admission of certain evidence, the instructions of the court concerning the same, and the refusal of the court to give a certain instruction and direct a verdict for the defendant.

[1] 1. The indictment charges in substance that on or about the 10th day of September, 1922, at a point near Kellogg, in the state of Idaho, the defendant did "then and there willfully, knowingly, unlawfully, and feloniously receive and have in his possession the sum of two thousand dollars in United States currency, to wit, one hundred twenty-dollar bills in paper currency of the United States of America, a more particular description being to the grand jurors unknown," which $2,000 had been, on or about the 28th day of March, 1922, at Kellogg, stolen by one Edward J. Hicks from a certain mail pouch which had theretofore been dispatched from the Spokane & Wallace Railway post office train No. 22 of the Oregon-Washington Railroad & Navigation Company to the post office at Kellogg, and which pouch was then and there in the course of regular mail transportation, and at the time defendant received and had in his possession the money referred to he knew that the same had been so stolen by the defendant Hicks. The objection to the indictment is that it is indefinite and uncertain, because it does not state the name of the person or persons from whom the defendant is alleged to have received the money, nor the manner or circumstances under which it was received by him, or the ownership of the money, or contain a sufficient description thereof.

It is believed that these objections are without merit. The statute makes it a substantive offense for any person to receive or conceal or unlawfully have in his possession property which has been stolen from the mail, knowing the same to have been so stolen, and it has been held that it is not necessary, in an indictment for a violation of this provision, to allege the ownership of the property charged to have been received by the defendant (Thompson v. U. S. [C. C. A.] 202 F. 401, 47 L. R. A. [N. S.] 206), nor the name of the person from whom he received it (Kirby v. U. S., 174 U. S. 47, 19 S. Ct. 574, 43 L. Ed. 890). The money alleged to have been received by the defendant is described in the indictment as 100 $20 bills, paper currency of the United States, a more particular description being to the grand jurors unknown, and this we take it is sufficient.

[2] 2. Hicks was called as a witness for the government, and testified that he was the same Hicks who was convicted on or about May 28, 1922, under two certain indictments charging him with stealing from the mail on or about the 28th day of March, 1922, at Kellogg, two certain registered parcels, one containing $10,000 and the other $2,000, the property so stolen being contained in a mail pouch which had theretofore been dispatched from Spokane & Wallace Railway post office train No. 22 to the post office at Kellogg by the Spokane Branch of the Federal Reserve Bank, addressed to the First National Bank of Kellogg, and which was at the time in course of regular transportation of mail from Spokane to Kellogg, and that he stole these two parcels from the mail pouch at or about the time stated in the indictment; that he thought there were two or three bundles containing currency of the denomination of $20, and as a result of this conviction he was sentenced to confinement at McNeil Island. On cross-examination he testified that at the

time of the offense he was in partnership at Kellogg with his son-in-law, C. W. Glassen, in the stage and for-hire car business; that he was convicted on four indictments; that he buried most of the stolen money under the floor of his garage, but put a part of it in an automobile in the garage; that the bonds stolen by him were thrown in the river under the second bridge west of Kellogg.

The government thereupon offered in evidence certified copies of the indictments against Hicks with the statement that they were offered "for the description, so that we may know that we are talking about the same thing." The court, over the objection and exception of the defendant, admitted the indictments for "merely circumstantial purposes," and advised the jury at the time that "these indictments are not offered for the purpose, and you will not consider them for the purpose, of establishing the truth of the charge that this property has been stolen—that is, that there had been any theft of the mail—and you will not consider them for that purpose at all. They are no evidence at all of the commission of any crime." Under these circumstances, the admission of the indictments, if error, was harmless. They were not offered nor admitted as evidence tending to prove that the money alleged to have been received by the defendant had theretofore been stolen from the mails and the jury were so advised.

3. The next assignment of error is the admission, over the defendant's objection and exception, of evidence concerning what is referred to as the four hundred dollar transaction. There was evidence on the trial tending to show that in August, 1922, Mrs. Hicks, while on her way to visit her husband, who was then confined in the penitentiary at Mc-Neil Island, called on and had an interview with the defendant in Seattle, in which he told her that he had been over to see her husband, and they had made arrangements to try to get him out of the penitentiary; that her husband had spoken about some bonds, but they had made no definite arrangement, and he wanted her to go over and ascertain what her husband wanted to do; that she went to the penitentiary, saw her husband, and the next day again called on defendant; that she then informed him of the place where her husband said he had cached about $14,000 in bonds, and where they could be found, and the defendant made a draft or sketch of the place as described by Mrs. Hicks; that Mrs. Hicks informed the defendant in that conversation that her husband had said that he (defendant) was to go over to Kellogg and look for the bonds, and if he found them to cash them, if they were not registered, and to use $5,000 of the proceeds to secure his (Hicks') release, but if he could not get the bonds defendant wanted $2,000. She informed the defendant that her husband also told her to ask him if he could let her have some money, as she was in need, and defendant said that he would do so if he could get it, and for her to send over to him what could be found; that she told defendant that her husband had informed her son-in-law that there was some money hidden in one of the cars, and he (defendant) said for the son-in-law to get it and send it to him at his address in Seattle by registered mail, and for her not to try to spend any of it in Kellogg, but have it put in a box and sent to him, she placing some name on the outside of the box, for the return of the package in case of its miscarriage; and that upon the receipt of the package he would wire her money to whatever address was on the outside of the package, but when the wire was received for her to demand cash, and not accept a check or draft.

After this conversation Mrs. Hicks returned to Kellogg, told her son-in-law of the interview with defendant, and he found the money in the car, and she put $4,000 in a box, and on August 19th sent it by registered mail, addressed to the defendant at his Seattle office, the package having indorsed thereon, "Return to Mrs. B. F. Marks, Wallace, Idaho." The package was received at defendant's office and receipted for by his clerk, and on August 24th an application was made to the telegraph office at Seattle, in the name of one Petersen, for a money transfer of $200, payable to Mrs. B. F. Marks, Wallace, Idaho, and such transfer was made by wire, and the money received by Mrs. Hicks' daughter.

On September 8th the defendant, in company with one Jensen, drove over to Kellogg and made search for the bonds at the place where Hicks is reported to have said he placed them, but was unable to find them. In the evening of that day they drove by the Hicks garage, and Mrs. Hicks advised defendant not to stop at the garage, because she thought they were being watched, but that, if he wanted anything, he could write a note and throw it on the porch. About half an hour later a note was thrown on the porch, stating, "Meet Al Wood at Samuels Hotel, room 25." The defendant and Jensen were registered at this hotel, and under the names of Wood and Hansen, and occupied rooms 25 and 26.

The next day Glassen and his wife went to

room 25, met the defendant, who said that his name was Al Wood, and introduced the other man to them as Hansen. The defendant stated to them that he was unable to find the bonds, and would have to have $2,000 to carry on the case. He was told by the Glassens that he could get the money if he would stop at the garage the next morning, but he said that he preferred not to do so, for fear of being identified, but that he would go out a short distance, and they could follow him with the money. That night Glassen took up the money from under the garage, and the next day defendant and Jensen drove by in the morning, sounding the horn of their car, and a few minutes later Glassen and his wife followed, overtook the defendant and Jensen about two miles from town, and threw into their car a package containing $2,040 in currency. Some time later Mrs. Hicks again saw the defendant in Seattle, and at her request he gave her an additional $200, taking her note, which was subsequently destroyed.

The defendant denied the alleged conversation with Mrs. Hicks concerning the $400 transaction, denied that he received any money by registered mail, as claimed by the government, or that he sent or caused to be sent a telegraph transfer of $200 payable to a Mrs. Marks, denied the alleged interview with the Glassens at Wallace, or the receipt of the $2,000, or any sum of money, as related by them, and claimed that the purpose of the visit of himself and Jensen to Kellogg was to search in good faith for the stolen bonds, so they could be returned to the insurance company, to the end that Hicks might be released from the penitentiary and the defendant receive a reward from the company; that he conducted the search for the bonds in the night and under cover of darkness, to prevent search for the property by other parties.

The defendant requested the court to instruct the jury that, in arriving at their verdict, they should entirely disregard the evidence concerning the $400 transaction, but, if it declined to do so, to advise them that they must first determine whether the defendant received the $2,000 as claimed by the government, and, unless they so found beyond a reasonable doubt, they should acquit the defendant, but, if they did so find, then, and then only, could they consider the $400 transaction, for the purpose of determining whether, in receiving the $2,000, defendant knew or had reasonable ground to believe that it was money which had previously been stolen by Hicks from the mails while in transit. The court refused the requested instruction with-

drawing from the jury the evidence concerning the $400 transaction, and instructed them that:

"Evidence has been admitted for your consideration regarding a certain $400 transaction which the government contends the defendant had with members of the Hicks family shortly before the alleged offense charged in the indictment. In the first place, gentlemen, you will be careful to bear in mind that this $400 is no part of the $2,000 embraced in or referred to in the charge laid in the indictment; hence, even though you should be convinced that the defendant had received this $400, that fact alone would not warrant you in convicting him of the charge on which he is now being tried. The sole charge there relates to the $2,000, and he is to be convicted or acquitted on that charge alone. The evidence as to the $400 was received for the purpose of possibly throwing some light upon the relations of the parties and their conduct in respect to the charge upon which the defendant is being tried; that is, the conduct of the defendant and the members of the Hicks family at or about the time of the alleged reception by the defendant of the $2,000, and particularly upon the important question of defendant's intention in receiving the $2,000, if he did receive it, and his knowledge or belief that it was stolen. You will consider the evidence relating to the $400 for this and no other purpose. Of course, gentlemen, unless you are convinced that the defendant did in fact receive the $2,000, any consideration of the evidence with respect to the $400 would be needless upon the question of intent or knowledge, because, unless you are convinced beyond a reasonable doubt that the defendant in fact received the $2,000, your duty would necessarily be to acquit. So, also, unless you are fully convinced that he did receive the $400, you will put aside all the testimony and other evidence in regard thereto as being immaterial."

In another part of the charge, the court, referring to the same matter, said that the evidence in reference to the $400 transaction might be considered by the jury as "possibly throwing some light on the question of defendant's intent in receiving the $2,000, if he received it—whether he had knowledge that it was stolen."

The defendant stoutly contends that the admission of evidence concerning the $400 transaction, and the refusal of the court to direct the jury to disregard it, and its instruction with reference thereto, was error highly prejudicial, for it related to a separate and

distinct offense from that charged in the indictment, and wholly collateral to the issue on trial.

[3] The general rule is unquestioned that, when a defendant is put on trial for one offense, evidence of a distinct offense unconnected with that laid in the indictment is not admissible. Smith v. U. S. (C. C. A.) 10 F.(2d) 787; Crowley v. U. S. (C. C. A.) 8 F.(2d) 118; Terry v. U. S. (C. C. A.) 7 F.(2d) 28; Paine v. U. S. (C. C. A.) 7 F.(2d) 263; Heitman v. U. S. (C. C. A.) 5 F.(2d) 887. While this is the general rule, the exceptions are so numerous that it has been said: "It is difficult to determine which is the more extensive, the doctrine or the acknowledged exceptions." Trogdon v. Com., 31 Grat. (Va.) 870; State v. Baker, 23 Or. 443, 32 P. 161. It does not apply where the evidence of the other offense directly tends to prove the crime charged in the indictment, or when a complete account of the offense charged and the defendant's connection therewith cannot be given, without disclosing the particulars of such other acts, or when it is so connected and intermingled with the crime charged as to form one entire transaction, and proof of one involves proof of the other.

Evidence which is relevant is not rendered inadmissible because it proves or tends to prove another and distinct offense. Astwood v. U. S. (C. C. A.) 1 F.(2d) 639; McCormick v. U. S. (C. C. A.) 9 F.(2d) 237; Tucker v. U. S. (C. C. A.) 224 F. 833; Lueders v. U. S. (C. C. A.) 210 F. 419. Thus it is said, in Rex v. Bond, 2 K. B. 389, quoted with approval in Astwood v. U. S., supra: "The general rule cannot be applied where the facts which constitute the distinct offenses are at the same time part of the transaction which is the subject of the indictment. Evidence is necessarily admissible as to acts which are so closely and inextricably mixed up with the history of the guilty act itself as to form part of one chain of relevant circumstances, and so could not be excluded in the presentment of the case before the jury without the evidence being thereby rendered unintelligible."

[4] The testimony concerning the $400 transaction, it seems to us, was so closely connected and interwoven with the matter under investigation and defendant's relation with the Hicks family and the stolen money as to render it competent. It occurred but a few days prior to defendant's visit to Kellogg, where it is alleged that he received the money laid in the indictment. It was not, in our judgment, error for the government to bring before the jury the entire history of the defendant's connection with the matter, so it could more intelligently determine whether he did in fact receive the $2,000 referred to in the indictment, and, if so, whether he knew at the time he received it that it had been stolen from the mail by Hicks. The evidence of the $400 transaction was but a part of one general dealing between the defendant and the Hicks family concerning the stolen money, and could not have been excluded without depriving the government of important and pertinent testimony. The court was particular to limit the application of the testimony, so as to prevent any improper use thereof.

The defendant complains that, because the court instructed the jury that, if it found, beyond a reasonable doubt, that the defendant received the $2,000 as claimed by the government, it might, in that event, consider the $400 transaction on "the important question" of defendant's intent in receiving the money and his knowledge that it was stolen. The argument is that the question of intent or knowledge was not the important question in the case, but whether the defendant received the money or not.

[5, 6] It is, we take it, scarcely accurate to say that intent or knowledge was not important, or that the fact, if it is a fact, that the defendant received the $2,000 in the manner and under the circumstances as claimed by the government, without more, would show a guilty knowledge and intent. The manner of delivery and receipt of the money was unusual, and suggestive of conscious wrongdoing. The jury might have found, from the fact alone, the necessary guilty knowledge: but it was not conclusive, but open to explanation. Evidence is not inadmissible because a jury may have found in favor of the government without it. Shea v. U. S. (C. C. A.) 236 F. 97. The evidence was offered and admitted as part of the government's case. It was not required to assume that the defendant would not claim an innocent purpose in receiving the $2,000, if in fact he did receive it, and to meet that issue it had a right to offer the evidence complained of. Moreover, the record does not disclose that the court's attention was called to this feature in its instructions, or that an exception was taken to the instructions as given, or any part thereof. The evidence was, in our opinion, competent, as tending to show that the defendant knew he was dealing with stolen property, if in fact he received the $2,000, and if the language used by the court in its instructions was, in some instances, broader

than it should have been, its attention should have been called to the matter, and thus given an opportunity to correct it.

[7] 4. The next assignment of error relates to the admission of evidence, over defendant's objection, tending to show that the license for the automobile in which defendant and Jensen journeyed to Kellogg, in September, 1922, was issued to the defendant for that year; that, a day or two before going to Kellogg, Jensen, under an assumed name, applied for and received a license for the same car at Spokane; that defendant and Jensen occupied certain rooms at a hotel in Wallace under the names of Al Wood and R. L. Hansen; that Jensen was a frequent visitor to defendant's office in Seattle; and that in January, 1923, defendant paid for repairs on the automobile made in July and August of 1922, and January, 1923. This evidence was, we think, competent, as tending to show the conduct and relations of the defendant and Jensen on their visit to Kellogg at the time it is claimed defendant received the $2,000, and whether it was for the honest purpose of searching for the stolen bonds, with the bona fide intention to return them to their rightful owner, as claimed by the defendant, or whether it was with the intention and purpose as claimed by the government.

[8] 5. And, finally, it is insisted that the court erred in not directing a verdict of acquittal, for the reason that there is no evidence that the money alleged to have been received by the defendant was in fact stolen by Hicks while in the course of regular mail transportation. Although the bill of exceptions does not purport to contain all the evidence material to the assignment, it does, in our judgment, contain enough to require the submission of the issue to the jury.

It follows that the judgment must be affirmed; and it is so ordered.