## QUIG v. UNITED STATES.

Circuit Court of Appeals, Third Circuit.
June 12, 1929.

No. 4020.

T. McKean Chidsey, of Easton, Pa., John A. Bernhard, of Newark, N. J., and Chidsey, Maxwell & Frack, of Easton, Pa., for appellant.

Phillip Forman, U. S. Atty., of Trenton, N. J.

Before BUFFINGTON, Circuit Judge, and SCHOONMAKER and THOMSON, District Judges.

THOMSON, District Judge. The defendant was indicted for violation of the National Banking Laws under sections 5208 and 5209 of the Revised Statutes (12 USCA §§ 501, 591, 592). One Hunsberger was indicted as principal with Quig as accessory before the fact, the indictment containing four counts. The court directed a verdict for the defendant as to the first three counts, submitting the fourth count to the jury. This count charged Hunsberger with willfully misapplying and converting to his own use $500 of the funds of the bank, charging Quig with aiding and abetting therein. Hunsberger pleaded guilty to the indictment, and, on the fourth count submitted to the jury, a verdict of guilty was rendered against Quig. A motion for a new trial being overruled and judgment entered on the verdict, this appeal was taken.

It appears that in 1921 appellant became interested in a patent device for fastening tires on automobiles, and in September of that year registered under the laws of Pennsylvania as Triangle Tire Rack Company. In the latter part of the year, he applied to Hunsberger, who for quite a time had been cashier of the Hope Bank, for a loan in his business, and Hunsberger accepted the note of the Triangle Tire Company for $500, payable to Hunsberger, which was to be indorsed by him and discounted at the bank. A check of the Triangle Company was then drawn by Quig, the appellant. Hunsberger, however, did not indorse this note or have it discounted, but, without appellant's knowledge, took care of the check of the Triangle Company by sending a draft of the Hope Bank to the Federal Reserve Bank of New York, which had passed through a third party to the Reserve Bank for clearance. No mention was made by Hunsberger in his direct examination of this note, stating merely that he had taken care of the Triangle Company check by sending the Hope Bank draft to the Reserve Bank, and that no funds to meet the Triangle Company check were received until the following April, when a note of that company, indorsed by one Porter, was brought to the bank and discounted by him. On cross-examination, however, he admitted the receipt from appellant of the earlier note, which was submitted to him and identified, stating that he had a faint recollection of return of original note to appellant, stating that the bank would not discount it and that a note with an indorser would be required. The sharp issue of the case was whether or not appellant intended to injure and defraud the bank. It would seem that if he gave the Triangle Company note in the belief that it would be discounted, and when advised that this first note was not satisfactory, immediately gave the note indorsed by Porter, who afterwards paid the note, no criminal intent could fairly or properly be inferred. The matter reduced itself to the question whether the Porter note had been given on or before its date and under the circumstances claimed by the defendant. The transaction occurred in 1921 and Hunsberger's testimony, which seems to be contradictory and uncertain, certainly permitted, if not impelled, the conclusion insisted upon by the defendant.

In this situation, where guilt of defendant rested upon a slender foundation, extra care in the trial should have been observed in order that the defendant's rights might not be unduly prejudiced.

When the case was presented to this court, two matters stand out as of importance and are controlling in the decision of the case. These relate, first, to the remarks of the district attorney in opening the case to the jury, and, second, in relation to the admission by the court against defendant's objection of the record of certain offences theretofore committed by the defendant.

In opening his case, the district attorney, among other things, said:

"This indictment is against Quig and Hunsberger. Hunsberger pleaded guilty and was sentenced to ten years in the Atlanta Penitentiary, and Hunsberger is here today to do the right thing by the Government by telling the truth about this matter. Hunsberger will be one of the witnesses upon whom the Government depends in this case, and we want to say at the out-set that it is no pleasure to the Government to produce men

who have been convicted of crime, and ask you, Gentlemen of the Jury, to take their word as against the word of men who have not been convicted of crime, but I want you to look this man over; see the man who has paid for the crime, and determine whether this young man, branded for life as a felon, should alone suffer for these transactions which we believe we can prove to you were entirely for the benefit of another man, who' has not suffered or been penalized in any way.

"These indictments were returned in 1921 by our Grand Jury and Quig and Hunsberger were arraigned on these two indictments and they both pleaded guilty to these two indictments.

"Pleas were made and they were belittled to such an extent that sentence was imposed upon them; sentence upon Hunsberger that he should pay a fine of $1000.00 and sentence upon Quig that he should pay a fine of $500.00.

"Quig owed about $55,000 to the Bank and he made a settlement and took a release from the Bank, paid them $45,000 and they agreed not to hold him for any more."

 These statements made by the district attorney in his opening to the jury, before the offer of any testimony, or any opportunity for the defendant to object or the court to pass on such objection, very naturally took serious, and, perhaps, permanent lodgment in the minds of the jury. They went far beyond the rights possessed by government counsel in outlining its case to the jury; contained statements wholly incompetent, were seriously prejudicial to defendant's case, and should not have been admitted. The court would well have been justified in withdrawing a juror and continuing the case.

In the second place, against the objection of defendant's attorney, indictments were offered in evidence against the appellant and Hunsberger of separate and distinct offenses committed some two years prior to the trial of this case. This testimony should have been excluded. In some rare cases, such as the passing of counterfeit money, where the offense for which the defendant is being tried appears to be one of a series of similar offenses of like character, evidence of a prior offense may in some cases be shown, but solely for the purpose of bearing on the intent with which the particular act was committed for which the defendant is being tried. Such cases are rare, and the admission of such testimony should not be permitted, except in the clearest case and for the single

purpose of bearing upon the question of intent. The only other case in which the record of a former conviction is admitted is for the sole purpose of affecting the defendant's credibility as a witness. Such records would not have been competent in the case at bar, because the defendant did not take the stand and was therefore not a witness in the trial. There was no legal justification for the admission of these indictments charging former offenses, and their admission was doubtless very prejudicial to the defendant's case.

Other assignments of error are alleged by the defendant, but these will not be considered, as we are of opinion that the statements of the district attorney in his opening speech to the jury and the admission of the record of prior offenses were so highly prejudicial as to call for reversal of the judgment.

Judgment is therefore reversed, and a new trial awarded.