## FLOOD v. UNITED STATES.

Circuit Court of Appeals, Ninth Circuit. December 9, 1929.

Rehearing Denied January 13, 1930.

No. 5867.

William D. Askren and Frank R. Jeffrey, both of Seattle, Wash., and Richard S. Munter, of Spokane, Wash., for appellant.

Roy C. Fox, U. S. Atty., and E. J. Farley, Asst. U. S. Atty., both of Spokane, Wash.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

WILBUR, Circuit Judge. Appellant was tried upon an indictment containing eleven counts, the first five counts charging embezzlement, the next three counts charging abstraction of the funds of the Exchange National Bank of Spokane, and the last three charging false entries in the books of said bank, a member of the Federal Reserve Bank, all in violation of 12 USCA § 592, Id., Rev. St. § 5209. He was acquitted on all the counts except the last six and convicted on each of the latter. The evidence adduced by the prosecution showed a plan or scheme by which moneys were taken from the bank without proper entries upon its book.

It appears from the evidence that the bank, in order to qualify as a depositary for public moneys, was required by the law of Washington to furnish surety bonds in large amounts. The amount of these surety bonds varied from time to time according to the amount of public money on deposit. Rebates of premium were paid by the surety company to the bank from time to time by reason of the cancellation of surety bonds or the reduction of obligations thereunder by reason of the decrease in the deposits of public moneys in the bank. These refunds of premium, up to 1924, had been made by a check payable to the Exchange National Bank of Spokane, State of Washington. Thereafter, under an arrangement made between the agents of the surety company and the appellant, as vice president of the bank, refunds were made by check of the agents of the surety company payable to cash. The surety company's agent collected the cash on these checks and turned it in to the teller in the exchange window of the bank. This money was accepted by the teller and a corresponding number of the credit slips were destroyed. These slips were left by various officers of the bank who drew out the amount of cash indicated thereby without any corresponding entries upon the books of the bank, these items being carried on the books as cash and were entirely unconnected with the bond premium transactions. By this method of procedure the books of the bank would show the original payment made for premiums on the surety bonds, but would not show any refund to the bank of unearned premiums, nor would the books of the bank show any entries concerning the cash items which were thus taken up by the cash paid by the surety company's agent to the teller at the Exchange window. In this manner it was possible for any one authorized or permitted to withdraw cash and substitute a credit slip to retain that cash to the amount of said premium refund without that fact being disclosed by the books of the bank. In addition to these refunds of premiums thus deposited by the surety company's agent, testimony was adduced to the effect that on a number of occasions when the appellant desired to take up the cash slips carried as cash on the books of the bank at the exchange window, he caused false bills to be rendered by the surety company's agents for premiums for surety bonds that were never executed. Thus, the books of the bank would show a payment for premiums upon surety bonds, when in fact no such bonds were executed by the surety company. The three false entries upon the books of the bank upon which the conviction of the appellant was based were items of this latter nature, to wit, an item of $400 in the expense register on April 2, 1926, an item of $250 in the expense register on April 25, 1927, and an item of $300 in the expense register on June 15, 1927. All these items were paid to Jones & Mitchell, agents of the surety company, according to

the testimony of S. A. Mitchell, upon false bills rendered on behalf of the surety company in pursuance of an agreement between the appellant and said firm and entered in the books of the bank, as aforesaid.

■■■■ This method of doing business with reference to the unearned premiums was admitted by the appellant who testified in the case, but he denied being a party to the rendition or payment of false bills for premiums and testified that he believed that bills thus rendered to have been genuine and certi-. fied the same for payment for that reason only. The evidence was sufficient to sustain the verdict as to false entries on the books of the bank, but the appellant contends that the trial court committed error in the reception of certain evidence over his objection.. This evidence concerned the issuance of a check for $200 payable to one H. Folger on July 30, 1926. The testimony was that H. Folger and Frank Sanger applied to the appellant for a contribution of $200 for political campaign purposes, that in pursuance of this solicitation the appellant drew a check in favor of H. Folger for $200 on the bank, and signed it "The Exchange National Bank of Spokane, Special, by E. E. Flood, the President," and that he attached thereto a memorandum on a plain slip of white paper indicating that the money thus withdrawn was drawn from the entertainment fund of the bank for the benefit of the Whitman County Fair. The tendency of this memorandum was to cause an entry in the books of the bank showing that the appellant had withdrawn some of the funds of the bank for an authorized purpose when he had in fact utilized it for a prohibited purpose, namely, making a contribution for political purposes, although it was not shown that such an entry was carried into the books of the bank. Timely objection was made to this evidence which was admitted solely for the purpose of showing the intent which actuated the appellant in the matter of the above-mentioned three entries alleged in the indictment to have been made falsely. Appellant claims that the evidence as to the Folger transaction tended to show a separate and distinct offense, namely, a contribution for a political purpose in violation of section 251, title 2, USCA, and also tended to prove a separate and distinct offense, namely, a separate and distinct false entry upon the books of the bank. Evidence is not to be excluded merely because it may tend to prove another offense if it is otherwise relevant and competent. Wood v. United States, 41 U. S. (16 Pet.) 342, 358, 10 L. Ed. 987; Moore v. United States, 150 U. S.

57, 14 S. Ct. 26, 37 L. Ed. 996; Johnston v. United States (C. C. A.) 22 F.(2d) 1; McHenry v. United States, 51 App. D. C. 119, 276 F. 761. Evidence, however, cannot be admitted to show intent simply because it does show another similar offense. Niederluecke v. United States (C. C. A.) 21 F.(2d) 511, 513; Paine v. United States (C. C. A.) 7 F.(2d) 263, 265; Quig v. United States (C. C. A.) 33 F.(2d) 820. Neither can evidence of other offenses be received to show a plan or system, if the evidence shows an entirely different system or method. For illustration, if, in this case, it had been shown that Folger was paid cash from the exchange window for political purposes and a credit slip had been placed with the cash at that window and was subsequently taken up by the cash deposits of unearned premiums or payments made on false bills made by Jones & Mitchell, the evidence would unquestionably have been admitted to show that the scheme of handling moneys paid in by Jones & Mitchell, the surety company's agent, was adopted for the purpose of covering up illegal or unauthorized expenditures. However, the situation presented by the evidence is entirely different from that suggested. The witness Folger was given a check drawn by the bank upon a special entertainment fund, and the books of the bank thus show that Folger was paid $200 by such check payable to him and endorsed by him. The only false entry, or memorandum, made in connection with this check was the words "Whitman County Fair" in the handwriting of the appellant attached to the check. It will be observed that this transaction not only had no connection with the alleged false entries charged in the indictment, but that the method of handling the matter was entirely different from the method in which it was claimed such false entries were made. In so far as the Folger transaction tended to show a system, it showed an entirely separate and distinct system from that involved in this charge. It merely tended to show that payments made by the appellant for political purposes were by his direction to be charged on the books of the bank for entertainment and against a contingent fund established by the bank for entertainment purposes. At most, the evidence merely tended to show that the appellant was willing to commit a crime similar to that charged against him in the indictment, but this is not a ground for the introduction of such testimony. It had no relation to or bearing upon the items of false entry charged in the indictment and therefore comes under the general rule that evidence of a distinct

and separate offense is not admissible for the purpose of showing wrongful or corrupt intent in a transaction unless it bears some other and more intimate relation to the charge upon which the defendant is being tried.

Judgment reversed.