**WOLCHER v. UNITED STATES.**

No. 12992.

United States Court of Appeals
Ninth Circuit.

Nov. 17, 1952.

Leo R. Friedman, San Francisco, Cal., for appellant.

Chauncey Tramutolo, U. S. Atty., Robert B. McMillan, Asst. U. S. Atty., San Francisco, Cal., Walter M. Campbell, Jr., Regional Counsel, Penal Division, Bureau of Internal Revenue, San Francisco and James H. Shelton, Sp. Atty., Penal Division, Bureau of Internal Revenue, San Francisco, for the United States.

Before HEALY, ORR and POPE, Circuit Judges.

POPE, Circuit Judge.

The appellant was convicted under an indictment charging that he wilfully and knowingly attempted to evade and defeat some $30,000 of the income and victory taxes due and owing by him for the fiscal year ending June 30, 1944, in violation of § 145(b) of the Internal Revenue Code, 26 U.S.C.A. § 145(b). The questions presented on this appeal all relate to claimed errors in admitting and excluding evidence. It is therefore necessary to state only enough of the facts to indicate the significance of the evidence rejected or admitted over objection.

The theory of the Government's proof was that during the year in question Wolcher collected large sums from the sale of whiskey from which he derived income which he failed to return. The sales were made through San Francisco liquor wholesalers who would receive checks for the ceiling price of the liquor while the purchaser would pay an additional over ceiling amount in cash which went to Wolcher. His income tax return reported no gross income from sales of liquor at wholesale (which the sales above described were) except for an item of $3,000 profit made on a transaction not involved here.

Wolcher admitted the over-ceiling transactions, but contended that although he received those proceeds he made no profits from these operations for the reason that in purchasing or acquiring the liquor, he himself was obliged to make over-ceiling payments or bonuses in a large amount, and that the sums so paid wiped out any possible profit. He testified 'that the amounts so laid out by him were paid to one William Gersh, stating that on some shipments the over-ceiling bonus paid Gersh amounted to $20 and on others to $25 a case. He fixed the amount which he had thus paid Gersh as approximately $115,000. Gersh was the publisher of a New York City trade paper called "The Cash Box" devoted entirely to coin machines. Wolcher operated a concern which sold coin operated machines and he had known Gersh for 15 or 20 years. Wolcher testified that he sent substantial sums of money to Gersh during the period in question and that these remittances were made by check and by cash either through the mail or by express or delivered to Gersh in person.

Gersh was called as a rebuttal witness for the Government and while he stated that in 1943 he had handled money belonging to Wolcher in amounts totaling $85,000, his version was that the money was sent to him to obtain coin machines for Wolcher. His testimony was that at that time coin machines were very difficult to procure, and that they could be bought only by cash payment in advance of the full purchase price. This, he said, was why Wolcher sent him these sums of money. He testified that he bought ten phonographs for Wolcher during this period, the purchase amounting to $5250, but that he had

returned all the balance of the $85,000 to Wolcher.

Wolcher's version of the $5250 purchase which Gersh made was that he, Wolcher, had seen in a coin machine industry publication known as "The Billboard" an advertisement offering these machines for sale, and that he had sent a letter ordering them. He said that since the sellers wanted a deposit on the deal he telephoned to Gersh to make the deposit for him out of the money which Gersh had received from him and then had on hand, and that this is how Gersh happened to put up the $5250 on these machines. He testified that there was no shortage of coin machines; that during the year he purchased hundreds of thousands of dollars worth of such equipment; that although the only equipment of that character then for sale was used equipment, yet it was advertised for sale in large quantities.

Wolcher was asked on cross-examination: "Did you make the statement to Mr. Kirby that you were making in excess of $20 a case on all whiskey which you sold? He answered that he did not recall making such a statement. Thereafter Kirby was called and testified that in the latter part of 1942 or the first part of 1943 he had a conversation with Wolcher relative to the liquor transactions. He was asked to relate the conversation. The witness was permitted to answer, over objection, but was able to recall only that there was "a conversation of approximately $20 a case profit". The Government then produced a statement which Kirby had made in writing in 1948 at the instance of an agent of the Revenue Bureau. He was permitted to examine it and then was asked if on such examination his recollection as to the conversation inquired about had been refreshed. He replied in the negative. He then testified that when he had made the statement, the matter was then more fresh in his recollection than it was now. Thereupon the statement was offered and received in evidence over the objection of the defendant, upon statement of counsel for the government that it was offered as his "past recollection recorded". The objection was both that it was not a proper mode of impeachment, as well as that it was hearsay and otherwise not competent.

The document thus received was in question and answer form and contained the statement that Kirby had a very poor memory but that he would guess that the conversation took place in 1943, and at that time Wolcher, talking to Kirby about shipments of whiskey, stated that his profit "was estimated at $20 a case. That is the estimate of profit would be $20 a case."

■ This 1948 statement purporting to describe a conversation in 1943, should not have been admitted. We do not discuss the question of the propriety of attempting impeachment in the unusual manner here employed, for we think that since Wolcher was the defendant a statement of a material fact, not amounting to a confession of guilt, if properly proven, would be admissible as an admission of an accused defendant.[1]

■ The statement was incompetent and inadmissible for two reasons: Such a memorandum when used as past recollection recorded, where the witness "has no recollection of the facts stated in it," must have been made "while the occurrences mentioned in it were recent, and fresh in his recollection". Maxwell v. Wilkinson, 113 U.S. 656, 658, 5 S.Ct. 691, 692, 28 L.Ed. 1037. The recording, in 1948, of something said to have happened in 1943, was not sufficiently fresh and vivid to be probably accurate. This memorandum failed to measure up to any of the usual requirements of trustworthiness.[2] Furthermore, the statement was not properly verified by the witness. He did not testify that at the time he made the written statement he then knew it to be true. All that he said was that at the time the statement was made his recollec-

---

1. Dimmick v. United States, 9 Cir., 116 F. 825, 831; Ercoli v. United States, 76 U. S.App.D.C. 360, 131 F.2d 354, 356; see Wigmore on Evidence, § 821, note 4, and § 1039, note 2.

2. The cases are collected in Wigmore on Evidence, 3d Ed., § 745.

tion was fresher than it was at the trial. Its assertions were vouched for by no one.

During the taxable year in question Wolcher had been a member of a partnership known as "The Gold Coast" which was engaged in the sale of liquor by the glass. The business and the income of this partnership had nothing to do with the charge in this case.[3] The Government called as one of its witnesses an accountant who had been employed by Wolcher to prepare a partnership tax return for the Gold Coast for the fiscal year ending July 1, 1944. He produced a working copy of the return he had prepared. This return was never filed and differed materially from the return of the Gold Coast which was actually filed. In the return which the witness had prepared the inventory of the Gold Coast was shown to be some $31,000 whereas the return actually filed showed a much smaller inventory, some $16,500. The working copy of the partnership return thus prepared by the accountant was received in evidence over appellant's objection.

It was conceded by the Government that the Gold Coast return was not involved in the case because any profit shown thereon would not be included in Wolcher's return for the year here in question. It was offered and received by the court on the theory that its purpose was to show "wilfulness and intent".

■ When there is proof that an act has been done and the question arises whether it was done with criminal intent, other similar acts by the accused may be proven for the purpose of demonstrating that he was acting at the time alleged in the indictment with criminal intent and volition. In such cases the fact that the prior acts may themselves be criminal in character does not exclude them.

■ At the same time we must bear in mind that the commission of a wrongful act charged cannot ordinarily be established by proof that the defendant has previously committed other wrongful acts. It is fundamental that such a method of proof is inadmissible merely for the purpose of showing that the defendant has a generally criminal disposition or character.[4] Hence, if in order to prove intent, evidence is to be received of other wrongful acts, the acts thus proven must be of such character that as a matter of logic they tend to demonstrate a criminal intent at the time of the commission of the act now charged. For one thing the prior acts must be similar to the one now charged.[5]

■ The caution which the courts must exercise in such cases is well set forth in Boyer v. United States, 76 U.S.App.D.C. 397, 132 F.2d 12, 13. In that case, while the prior act proven was similar to that charged, the receipt of the proof of the prior act was held to be error because it occurred nearly two years before the date charged in the indictment. The general rule relating to admission or exclusion of evidence of such acts was stated as follows in 132 F.2d at page 13: "In various circumstances, therefore, evidence of earlier acts good or bad may be admitted, as tending in one way or another to show a man's state of mind, when he is charged with a later fraud. But the fact that intent is in issue is not enough to let in evidence of similar acts, unless they are 'so connected with the offense charged in point of time and circumstances as to throw light upon the intent.'"

In the case before us the circumstances relating to the preliminary draft of the partnership return were in no way connected "in point of circumstances" with the offense charged in the indictment. The only resemblance between the two sets of acts would be that both had to do with tax returns. But the partnership return was of an entirely different nature from the transaction for which the defendant was here on trial. The evidence relating to the partnership was not logically relevant either to prove or disprove the intent or knowledge

---

3. It did appear that some of the whiskey from which Wolcher is claiming to have made the profits here in question was sold by or through him to the Gold Coast.

4. See the cases cited in Shea v. United States, 6 Cir., 236 F. 97, 104.

5. Cf. Wigmore on Evidence, 3d Ed. § 302.

of Wolcher in connection with his performance of the acts shown at the trial and charged in the indictment.

■ There is complete lack of proof that the accountant's tentative partnership return was correct, or that the partnership return actually filed was not. But in the circumstances it must have been offered on the theory that the change from the larger inventory in the preliminary draft, to the smaller in the return as filed, meant that some act of chicanery was afoot. The jury would be apt to place that construction on it, and were thus invited to infer that the failure to include the tentative inventory in the final partnership return was a wrongful act. Upon this unwarranted assumption they were further permitted to infer defendant's guilt from the fact of a prior unrelated, dissimilar wrongful act. As stated in Boyer v. United States, supra, 132 F.2d at page 13, "No doubt the alleged fact that a man committed a crime on another occasion tends to show a disposition to commit similar crimes. But when the prior crime has no other relevance than that, it is inadmissible. Its tendency to create hostility, surprise, and confusion of issues is thought to outweigh its probative value. The law seeks 'a convenient balance between the necessity of obtaining proof and the danger of unfair prejudice.' The alleged fact that a man committed one forgery clearly increases the likelihood that he committed another forgery, but testimony to the earlier crime is not, for that reason alone, admissible." We hold that it was error to admit the working copy of the Gold Coast partnership return in evidence.

What we have said applies also with respect to an inventory which the accountant had prepared to accompany the working copy of the partnership return. In addition, it is noted that there was no evidence that the values attached to the inventory were correct or where they were obtained. They may have been gleaned by inquiry from miscellaneous persons who may or may not have been qualified to state values. None of these persons was called. The instru-ment was wholly without foundation. Compare United States v. Kelley, 2 Cir., 105 F.2d 912, 917.

■ The court also admitted in evidence a paper or memorandum obtained by a Government special agent from Wolcher's office files. The paper was dated February, 1936, and was a carbon copy of a purported note sent to the Seattle office of Wolcher's business. It bore the initials "L. E. W." and "E. C." It contained language to the effect that the writer or writers "should like to receive a check from you very soon against our private account, so that we can show a similar profit in the coming year and perhaps make considerable more money". The paper was wholly without foundation; there was no proof of its genuineness or who wrote it, or that it was a document made in the regular course of business, or otherwise. Its receipt over appellant's objection was error.

After the witness Gersh had testified on rebuttal that the sums he received from Wolcher were sent to him because coin machines were very difficult to purchase and could only be obtained by one armed with the full cash price, Wolcher testified on surrebuttal that at the time in question coin machines were plentiful and easily purchased and that they could be purchased on time. For the purpose of corroborating his testimony in this respect he offered in evidence volumes containing all weekly issues of the "Billboard" for the year here in question. These issues contained numerous advertisements of offers to sell coin machines on terms permitting down payments of substantially less than the full amount of the price. The evidence showed that the "Billboard" was a national publication and a trade paper specializing in this sort of information. They were excluded as immaterial.

■ It is generally held that the state of the market in securities or commodities may be proven by reports or quotations in newspapers and trade journals.[6] If the market in coin machines at the time in question was as claimed by Wolcher, the existence of the numerous offers to

6. Numerous cases are collected in a note at 43 A.L.R. 1192.

sell here sought to be proven would tend to corroborate Wolcher's testimony. We think that the offered evidence should have been received.

■ For a like purpose Wolcher offered in evidence correspondence between himself and a New Jersey company which was engaged in the business of selling similar machines. The correspondence was offered for two purposes. One was to show that the particular purchase of phonographs to which Gersh had testified had actually been negotiated by Wolcher himself and not by Gersh as the latter claimed. The second was to disclose that the coin machines were readily available without the necessity of cash in advance as Gersh had testified. The court refused to admit this evidence.

We think this evidence was material. It would have had weight in determining the question whether Wolcher or Gersh was telling the truth with respect to why the money was sent by Wolcher. It should have been admitted.[7]

Among the items of bonuses which Wolcher testified he had to pay in order to get whiskey during the year in question was a bonus or under-the-counter payment to one Worthy made to procure some 500 cases of whiskey furnished to the Gold Coast. Wolcher sought to show that this particular payment was occasioned by the fact that the quantity then procured was an especially large one and one very difficult to secure in the condition of the market for whiskey at that time. To show that there was a special reason for the demand and the payment of the bonus, Wolcher sought to prove by an employee of the seller that the particular purchase was very much out of line with the ordinary purchases of Gold Coast or by the Silver Rail, another liquor selling place in which Wolcher had an interest. This evidence was excluded.

It would appear that the size of the purchase and its relation to the purchases commonly made for this place would be a part of the circumstances then present likely to throw some light upon the probability or improbability of Wolcher's statement.

The question remains whether these erroneous rulings were prejudicial. If they were to be considered singly, each by itself, the situation might be different. Thus the exclusion of the evidence that the purchase of liquor on account of which Wolcher claimed to have paid a $10,000 bonus to Worthy was disproportionate in amount and value to other sales to the Silver Rail and the Gold Coast, might not be prejudicial in view of the fact that the witness Grusenemeyer testified to substantially the same matter. The evidence thus excluded might well be regarded as merely cumulative, and therefore its exclusion not prejudicial.

■ But with respect to the remaining erroneous rulings, when we consider them all together and in the light of the sharp conflicts of testimony which were left to be resolved by the jury, we cannot disregard the errors committed as without probable substantial influence upon the verdict of the jury. The rule which we endeavor to apply is that stated in Kotteakos v. United States, 328 U.S. 750, 764, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557: "If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress. * * * But if one cannot say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial in-

7. In Caten v. Salt City Movers & Storage Co., 2 Cir., 149 F.2d 428, 433, the court held that the trial court had properly admitted in evidence a letter received from a dealer in the type of merchandise there in question. The letter was received as evidence of the values as stated in the dealer's letter.

fluence. If so, or if one is left in grave doubt, the conviction cannot stand." ·

 We cannot say that these errors are those which "[do] not affect substantial rights" and hence that they should be disregarded.[8] The errors here listed require a reversal since in our judgment "the error might have operated to the substantial injury of the defendant." United States v. Grady, 7 Cir., 185 F.2d 273, 275.

The judgment is reversed and the cause is remanded with directions to grant the appellant a new trial.

———◆———

Edwin R. Holmes, Jr., and Jesse W. Shanks, Asst. U. S. Attys., Jackson, Miss., for appellant.

E. L. Trenholm, Jackson, Miss., for appellees.

Before HUTCHESON, Chief Judge, and BORAH, and RIVES, Circuit Judges.

8. Rules Criminal Procedure, 52(a), 18 U. S.C.A.