Bobby Ray GILL, Appellant,

v.

UNITED STATES of America, Appellee.

No. 18410.

United States Court of Appeals Fifth Circuit.

Jan. 5, 1961.

M. A. Marsal, Mobile, Ala., for appellant.

Ralph Kennamer, U. S. Atty., Mobile, Ala., for appellee.

Before RIVES, BROWN and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

Bobby Ray Gill was convicted of armed robbery of a bank in Sweet Water, Alabama, in violation of 18 U.S.C.A. § 2113.[1] Two codefendants pleaded guilty and were sentenced before Gill's trial. The trial turned on the ability of the Government to identify Gill as one of the robbers; in fact, the ringleader. On appeal, Gill contends that the trial judge erred: (1) in allowing the Government to impeach its own witnesses by asking leading questions; (2) in allowing the Government to introduce irrelevant prejudicial evidence that the defendant gave a worthless check before the robbery; (3) in admitting a newspaper photograph of the defendant containing printed matter that was hearsay. We find no reversible error, and affirm the judgment below.

The appellant's first contention telescopes two different objections. The rule against impeaching one's own witness has no necessary relation to the rule against asking leading questions. "Leading questions do not impeach. The subject matter may impeach; but the form of the question cannot convert a non-impeaching fact into an impeaching fact." 3 Wigmore on Evidence, § 915(2) p. 430. We find from the record that the so-called impeaching questions related to earlier statements the witnesses made to government investigators.[2] In each instance of alleged impeachment the witness was clearly evasive in his

---

1. The deposits of the Sweet Water State Bank are insured by the Federal Deposit Insurance Corporation, an agency of the United States government, hence bringing the offense within 18 U.S.C. § 2113 (f).

2. Thus, at one point, the prosecuting attorney asked one of the witnesses: "Did you make such a statement to an agent of the F B I * * * that this Defendant, Bobby Ray Gill, on that occasion showed you a lot of ten and twenty dollar bills, which he said was in the amount of $2,000.00?" And later: "Didn't you tell the F B I that he told you it was $2,000.00?" Again: "Have you ever made any statement to any agent of the F.B.I. that the driver of that car stated on that occasion that he

answers. Some reasonable latitude must be allowed the prosecuting attorney in refreshing a witness' recollection, particularly in dealing with a reluctant, if not necessarily hostile, witness. "[Leading a witness] is certainly not good practice, but the trial court has a reasonable discretion to permit leading questions." Azcona v. United States, 5 Cir., 1958, 257 F.2d 462, 466, 467. The three questions quoted in the footnotes related to secondary proof of the defendant's guilt. On the question of the identification of Gill: the bank employees identified Gill positively as one of the men who held the pistol during the robbery; [3] the description of the pistol, by one of the bank employees, was a complete description of the pistol found on Gill at the time of his arrest; [4] the automobile used in the robbery was the same automobile repaired for Gill five days before the robbery, and the same automoile in which the third robber picked up the codefendants, hitching a ride, the day before the robbery; [5] one of the codefendants identified Gill as the man who picked them up and talked them into robbing the bank; the other codefendant said that Gill "resembled" the man, but "I don't say it is and I don't say it ain't." After reading the record carefully, we cannot say the leading questions were so prejudicial as to affect the defendant's substantial rights. Rule 52, F.R.Crim.P., 18 U.S.C.A.

■■ Second, the appellant contends that the testimony of the Government's witness, William A. Knight, was irrelevant and prejudicial. Knight testified that October 3, 1959, ten days prior to the robbery, Gill gave him a worthless check for ten dollars at Knight's grocery store in Montgomery. The testimony was relevant. Its purpose was to show Gill's straitened financial circumstances before the robbery took place, as contrasted with his relatively affluent financial circumstances immediately after the robbery. As this Court has observed: "[P]roof of the unexplained possession of unusual amounts of money after a robbery, standing alone, is not competent evidence to connect the possessor with the robbery; but it becomes competent provided it is further shown that he was impecunious prior thereto." Self v. United States, 5 Cir., 1957, 249 F.2d 32, 35.

■ Finally, the appellant contends that the court erred in allowing in evidence a newspaper photograph of Gill and the printed matter under the photograph. This contention is without merit. Gill's trial attorney first exhibited the newspaper photograph to one of the witnesses, to show that Gill was *not* the man in the photograph. The Government requested that the photograph, previously identified, be introduced into evidence. In the circumstances, the court did not err in admitting the complete picture, photograph and descriptive caption.

The judgment of the trial court is therefore affirmed.

---

helped drill a water well there?" The appellant contends also that the line of questions used in examining the codefendants was improper. Both codefendants testified with obvious reluctance, one being evasive to the point of hostility.

3. Three ladies testified that the defendant was in Montgomery on the porch of their rooming house at the time of the robbery.

4. The pistol, a .22 caliber black automatic, had unique characteristics: "The gun had a little tape from the hammer on back on to the front of the barrel, and right at the barrel it had a piece that went round to hold the sight on."

5. The hold-up car was a blue and white four-door 1955 Chevrolet car bearing a Mississippi license plate No. 384–406. This description tallies with the car Calloway Garage in Montgomery, Alabama, repaired for Gill. It tallies with the description of the car that picked up the codefendants, Watkins and Smith. According to Watkins and Smith, the third man (Gill, as the Government contends) instructed them to get rid of the automobile as a "hot car". Watkins and Smith abandoned it on a parking lot in Nashville, Tennessee.