Robert **PARKER**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 21873.

United States Court of Appeals
Ninth Circuit.

Aug. 16, 1968.

---

Ralph R. LePera (argued), Los Angeles, Cal., for appellant.

Dennis Kinnaird (argued), Asst. U. S., Atty., Wm. M. Byrne, Jr., U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES and ELY, Circuit Judges, and THOMPSON,* District Judge.

* Hon. Bruce R. Thompson, United States District Judge, Reno, Nevada, sitting by designation.

BARNES, Circuit Judge:

Appellant was indicted on six counts of armed robbery of national banks, including charges that he forced six different hostages to "accompany him" into the banks in question to "hold the bag" and assist in the robberies (thus "kidnapping" his aide). 18 U.S.C. § 2113(a), (d), (e). Prior to trial, the government dismissed Counts V and VI. Appellant was convicted by a jury on all four remaining counts, the jury finding that the conviction should be "without capital punishment."

Appellant was represented by counsel from arraignment through trial, and on this appeal. He was sentenced to twenty-five years on each count, the sentences to run concurrently. Jurisdiction below rested on 18 U.S.C. § 2113, and here on 28 U.S.C. § 1291.

Three alleged errors are raised. First, appellant claims that his pre-trial line-up confrontation was so unnecessarily suggestive and conducive to mistaken identification that he was denied due process of law. Second, he challenges the trial court's refusal to exclude the testimony of Wilbur Robinson, Jr., relating to an offense not charged in the indictment. Third, 18 U.S.C. § 2113 is claimed to be unconstitutional. We find no merit in any of these contentions, and we affirm the convictions.

## I. THE LINE-UP

■ Appellant relies upon the Supreme Court's holdings in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, each decided June 12, 1967. As appellant's counsel states in his brief, "appellant would fall within the meaning of and scope of the *Wade* and *Gilbert,* supra, cases but for the regrettable limiting retroactive effect of Stovall v. Denno," 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (also decided June 12, 1967). Regrettable as it may seem to all persons tried *before* June 12, 1967, non-retroactivity is the rule laid down by the Supreme Court of the United States in *Stovall,* in view of its desire not to "seriously disrupt the administration of our criminal laws." 388 U.S. at 300, 87 S.Ct. at 1971.

We turn then, as did the Supreme Court in *Stovall,* to the question of whether appellant's line-up confrontation was "so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." 388 U.S. at 302, 87 S.Ct. at 1972.

We think the line-up in which appellant participated suffered from no such constitutional deficiency, and believe the matter is adequately covered by the recital in the government's brief (the essential truth and accuracy of which is undenied by appellant's counsel):

"During the course of the trial the Government called some fifteen witnesses to the stand all of whom made an in-court identification of the appellant as the man who robbed [one or more of] the respective banks alleged in the indictment. The record discloses that of these fifteen identification witnesses only five actually attended a lineup in which the appellant appeared [R.T. 123, 154, 312, 332, 361]. Nine of the identifying witnesses had only seen photographs of appellant prior to their in-court identification [R.T. 113(35), 186, 225, 257, 280, 293, 298, 374, 403]. It was not determined how the remaining one witness had previously identified the appellant [R.T. 365].

"Of particular note is the fact that four of the Government's identification witnesses were not the usual type of identification witness who is exposed to a criminal for but a short period of time during the actual commission of a crime. The Government produced four hostages whom appellant had kidnapped at gun point and had been in appellant's company listening to his directions and observing his actions for at least thirty minutes in most instances [R.T. 113(20), 184, 390]. Of these four hostages, only one attended a pretrial lineup [R.T. 361]. The remaining three merely saw photographs of appellant, among others, prior to

their in-court identification [R.T. 113 (35), 186, 403].

"In light of the overwhelming number of identifying witnesses who never participated in any lineup (nine) it is the Government's position that appellant was not denied due process of law in any way by the pretrial lineup where but five Government witnesses identified him. * * *

"Finally, the identification made by Mr. Earl Poke, one of the hostages, is illustrative that the identifications of appellant met the standard set by the Supreme Court in *Wade* and *Gilbert,* supra, in that the identifications were not the fruit of any earlier identifications made in the absence of appellant's counsel [R.T. 413].

" 'Q. BY MR. GLASSMAN: In Court on your direct testimony you have identified the defendant Robert Parker as the man who abducted you at the point of a gun on the day in question?

" 'A. Yes, Sir.

" 'Q. Is that identification based upon your observing him in this Court room this afternoon?

" 'A. Yes, Sir.' " Brief for Appellee at 8–10.

We have checked each transcript reference and find each statement fairly, adequately, and accurately represents the evidence presented to the jury. We find no denial of due process.

## II. PROOF OF SIMILAR CRIMES

■ After a stumbling start in the trial court, the prosecution finally developed the theory that the testimony of Wilbur Robinson, Jr., was admissible to show appellant's *modus operandi,* and to aid in establishing his identity. Appellant objects because the government first stated it proposed to introduce the evidence to prove intent, which appellant alleges was unnecessary to the crime charged. But the court specifically ruled the evidence was admissible to show a *modus operandi* precisely similar to that

charged to appellant, R.T. 429, and which was unusual in character and detail.

Mr. Robinson's testimony related to the appellant's alleged conduct on October 17, 1966. Count I charged similar acts on March 15, 1966; Count II charged similar acts on October 28, 1965; Count III charged similar acts on July 1, 1965; and Count IV charged similar acts on November 19, 1964. Thus the alleged objectionable evidence related to acts subsequent to the crimes charged.

The alleged remoteness of the acts sought to be proved is not decisive as to admissibility, although it may affect the weight of the evidence. Other factors are more important, such as the unique or bizarre nature of the conduct involved, the geographical area in which the conduct took place, and the like.

Appellant cites United States v. Stirone, 262 F.2d 571 (3d Cir. 1959), rev'd on other grounds, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). We agree with Judge Goodrich's statement in that case:

"The question of admissibility of evidence of offenses other than the one for which the defendant is on trial is a very difficult one. * * * The difficulty is one which is inherent in the nature of the problem. Anyone obligated to determine the guilt or innocence of a defendant charged with a particular crime invariably would be influenced by a showing that the defendant commits crimes in general. * * *

" * * * Evidence of other offenses may be received if relevant for any purpose other than to show a mere propensity or disposition on the part of the defendant to commit the crime." 262 F.2d at 576 (footnotes omitted).

■■ This court has not hesitated to find error and to reverse conviction when proof of prior crimes has been introduced merely to show their commission, irrespective of identity, intent, design of plan, or when irrelevant to the crime charged. Cf. Thomas v. United States, 363 F.2d 159 (9th Cir. 1966); Cook v. United States, 354 F.2d 529 (9th Cir.

1965). We have held to the general rule that evidence of a defendant's previous misconduct or of other criminal acts is not admissible merely to show his criminal disposition or character, or to raise an inference that he was likely to commit a crime. Bush v. United States, 267 F.2d 483 (9th Cir. 1959); Wolcher v. United States, 200 F.2d 493 (9th Cir. 1952); Tedesco v. United States, 118 F.2d 737 (9th Cir. 1941).

■ But this general rule does not render evidence of prior offenses inadmissible in all instances. Anthony v. United States, 256 F.2d 50 (9th Cir. 1958); Harper v. United States, 99 U.S. App.D.C. 324, 239 F.2d 945 (1956); Bracey v. United States, 79 U.S.App.D.C. 23, 142 F.2d 85, cert. denied, 322 U.S. 762, 64 S.Ct. 1274, 88 L.Ed. 1589 (1944). Proof of conduct similar to that charged, which is peculiar, unique, or bizarre, is admissible to tend to prove identity. Drew v. United States, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964); United States v. Pugliese, 153 F.2d 497 (2d Cir. 1945); 2 J. Wigmore, Evidence §§ 410, 416 (1940). Proof of other crimes has likewise been held admissible to show a common scheme, plan, design, system, course of conduct, or to establish motive or intent, or absence of mistake or accident, Tandberg-Hanssen v. United States, 284 F.2d 331 (10th Cir. 1960); Simons v. United States, 119 F.2d 539 (9th Cir.), cert. denied, 314 U.S. 616, 62 S.Ct. 78, 86 L.Ed. 496 (1941), Reed v. United States, 364 F.2d 630, 633 (9th Cir. 1966), or when the acts proved are so inextricably mixed or connected with the crime charged as to tend to prove it, United States v. Spatuzza, 331 F.2d 214 (7th Cir.), cert. denied, 379 U.S. 829, 85 S.Ct. 58, 13 L.Ed.2d 38 (1964); Harper v. United States, 99 U.S.App.D.C. 324, 239 F.2d 945 (1956); Kobey v. United States, 208 F.2d 583 (9th Cir. 1953); United States v. Crowe, 188 F.2d 209 (7th Cir. 1951). In the case at bar, appellant's actions in relation to Mr. Robinson were identical to those alleged in the indictment. Cf. Flood v. United States, 36 F. 2d 444 (9th Cir. 1929).

As to proof of other offenses when robbery is the crime charged, see Feyrer v. United States, 314 F.2d 110 (9th Cir. 1963), cert. denied, Feyrer v. Boldt, 381 U.S. 940, 85 S.Ct. 1774, 14 L.Ed.2d 703 (1965); Gill v. United States, 285 F.2d 711 (5th Cir. 1961).

We find no error in the court's admission of the testimony of Wilbur Robinson, Jr., to prove *modus operandi.* That was one of several grounds on which it was admissible.

### III.

■ Appellant finally urges that the language of 18 U.S.C. § 2113(e) impairs appellant's right under the Constitution to trial by jury.

But here, his rights were not impaired. Appellant requested and received a trial by jury. Fortunately for him, it did not direct punishment by death. Appellant risked death, but suffered no detriment as a result of that risk. Consequently, he cannot now raise the issue as to what might have occurred had the jury recommended death, or what might have happened had he been dissuaded from choosing a jury trial. Appellant objects to the possible sentencing power of a jury to recommend a death sentence, but that power never affected him in any way, and is not relevant to his case.

Thus, United States v. Jackson, 390 U. S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) is not applicable under the circumstances of this case. As was said in Robinson v. United States, 394 F.2d 823 (6th Cir. 1968),

"The reasoning and ruling of the Jackson decision control our interpretation of the 1934 Federal Kidnaping Act. Under that decision, only three categories of convicted kidnapers can contest their convictions: defendants who pleaded guilty, defendants who waived a jury trial, and defendants who demanded a jury trial and are now under a sentence of death. Petitioner does not come within any of these categories; he was given a jury trial and is not now under a death penalty."

We need not go into the matter of the right of the court to order a trial by jury if a defendant desires to waive a jury, for appellant never expressed such a wish.

The several convictions are affirmed.

THOMPSON, District Judge (concurring):

I concur with the opinion of Judge BARNES and write only to clarify the facts which have inclined me to respectful disagreement with Judge Ely.

The indictment alleged six bank robberies and Parker went to trial on four of the counts. The method common to all the robberies was that the robber, posing as a hitch-hiker, kidnapped the "Good Samaritan" who offered him a ride and, at gunpoint, required the hostage to drive him to and to accompany him into a bank, and, having supplied him with a pillow case, directed him to fill it with money from the tellers' cages. The incident which prompted Parker's arrest occurred on October 17, 1966, when the hostage refused to participate in the final act of robbery of the bank but elected to attack and overpower the defendant. There is no doubt of Parker's identity as the person committing this felonious assault, all material circumstances of which were the same as the unique and unusual methods employed in the earlier bank robberies.

While, as Judge Ely so expressively shows, the line-up procedures used for the benefit of five of the fifteen identification witnesses who testified at the trial were not perfect, the police officials did not then have the benefit of all views expressed by the Supreme Court in *Wade*, *Gilbert* and *Stovall*. More importantly, it must be emphasized that four of the hostages who identified defendant in Court, witnesses who had enjoyed prolonged contact with defendant, were not exposed to any suspect police line-up and six of the other fifteen witnesses who made in-court identification had not participated in a police line-up.

The Supreme Court, in its trilogy of police line-up decisions, has made it repetitiously clear that not only is the constitutional right to counsel, in identification line-ups, not to be applied retroactively but also that the harmless error rule of Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, is to be utilized in this type of case.[1]

The line-up procedures employed in this case were not perfect, but they were

---

1. "We therefore think the appropriate procedure to be followed is to vacate the conviction pending a hearing to determine whether the in-court identifications had an independent source, or whether, in any event, the introduction of the evidence was harmless error, Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, and for the District Court to reinstate the conviction or order a new trial, as may be proper. See United States v. Shotwell Mfg. Co., 355 U.S. 233, 245–246, 78 S.Ct. 245, 253, 2 L.Ed. 2d 234." United States v. Wade, 388 U.S. 218, at 242, 87 S.Ct. 1926, at 1940.

"Gilbert is therefore entitled only to a vacation of his conviction pending the holding of such proceedings as the California Supreme Court may deem appropriate to afford the State the opportunity to establish that the in-court identifications had an independent source, or that their introduction in evidence was in any event harmless error.
" * * *
"Therefore, unless the California Supreme Court is 'able to declare a belief that it was harmless beyond a reasonable doubt,' Chapman v. State of California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, Gilbert will be entitled on remand to a new trial or, if no prejudicial error is found on the guilt stage but only in the penalty stage, to whatever relief California law affords where the penalty stage must be set aside." Gilbert v. State of California, 388 U.S. 263, at 272 and 274, 87 S.Ct. 1951, at 1956 and 1957.

"At the very least, the processing of current criminal calendars would be disrupted while hearings were conducted to determine taint, if any, in identification evidence, and whether in any event the admission of the evidence was harmless error. Doubtless, too, inquiry would be handicapped by the unavailability of witnesses and dim memories. We conclude, therefore, that the Wade and Gilbert rules should not be made retroactive." Stovall v. Denno, 388 U.S. 293, at 300, 87 S.Ct. 1967, at 1971.

fairly good and were not so devoid of merit as to make them wholly suspect. The wealth of other identification .evidence, not so tarnished, directs me unhesitatingly to the conclusion that whatever imperfections existed in the line-ups here constituted harmless error beyond a reasonable doubt.

Inasmuch as Judge Ely concedes that "there is now no factual basis for the conclusion," the argument that Appellant was prejudiced by facing a possible death penalty has been, I believe, effectively refuted by the Supreme Court. Bumper v. State of North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797, decided June 3, 1968; Witherspoon v. State of Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, decided June 3, 1968.

ELY, Circuit Judge (dissenting):

I respectfully dissent. Parker was tried before the time when the Supreme Court in *Jackson,* determined that the death penalty provision of the statute in question is unconstitutional. As is not true in the ordinary case, the jury here was, from the beginning,[1] directly concerned with the penalty and performed its duties under the impression that it might eventually be obliged to decide that Parker should die. It is possible, although I concede that there is now no factual basis for the conclusion, that the effectiveness of Parker's trial attorney was impaired because he labored under the strain of his then awareness, before *Jackson,* that mistake on his part could result in the extermination of his client's life. I believe, however, as one who has appeared as an advocate in many jury trials, that it is not unreasonable to believe that a juror may have found it less

difficult to resolve the issue of guilt in .favor of the prosecution when he would have, immediately thereafter, the opportunity to be merciful in his decision as to the imposition of the extreme penalty.

Parker denied his guilt. He was not arrested until twenty-three months after the commission of one of the offenses for which he was convicted.[2] He is a Negro. In the lineup, there were seven to ten persons. Four cr five of them, including Parker, were Negroes, but none of them, except Parker, possessed the general physical characteristics of the culprit previously described by witnesses to the criminal acts. The offender had been described by certain of his victims as a Negro of light complexion, between six feet two inches and six feet four inches in height, weighing approximately one hundred ninety pounds. Parker met that description. His photograph had been shown to two of the identifying lineup witnesses prior to the time of the lineup, and some of the lineup witnesses discussed the offender's identity before, at the time of, and after the lineup. Except for Parker, only two Negroes in the lineup were remembered by one of the four identifying lineup witnesses. Neither of these Negroes bore the slightest resemblance to the hunted man. Both of them had black complexions, and one of them was slight in build, standing approximately five feet eight inches in height and weighing only about one hundred forty pounds. It is true, as Judge Barnes recites, that Parker was subsequently identified by persons who did not attend the lineup. Suggestion follows upon suggestion, however, and the lineup, constituted in a manner which would more probably lead to the con-

1. As the jury was selected, all those expressing "objection" to capital punishment were immediately, without further interrogation, disqualified and excused by the court. In his brief, appellant makes no point of this, and the argument that such a procedure would tend to produce a jury which would necessarily be "prosecution prone" was rejected in Bumper v. State of North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).

2. Parker was arrested on October 17, 1966, and, almost immediately thereafter, was made to participate, without the presence of counsel, in the police lineup. He was convicted of four offenses, alleged in the indictment to have been committed on March 15, 1966, October 28, 1965, July 1, 1965, and November 19, 1964, respectively.

firmation of police suspicion, contaminated the purity of constitutional process.

Parker should be tried anew, with the exclusion of the corrupt evidence resulting from the lineup and in an atmosphere not pervaded by the haunting spectre of capital punishment. I would reverse.