**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Joseph C. DANIELS, Jr., Defendant-Appellant.**

**No. 16860.**

United States Court of Appeals
Sixth Circuit.

May 17, 1967.

Stephen W. Young, Cincinnati, Ohio (Court-appointed), for appellant.

Thomas R. Smith, Cincinnati, Ohio (Robert M. Draper, U. S. Atty., Cincinnati, Ohio, on the brief), for appellee.

Before EDWARDS, CELEBREZZE and McCREE, Circuit Judges.

CELEBREZZE, Circuit Judge.

This is an appeal by Joseph C. Daniels, Jr., Appellant, from a conviction by a jury which found him guilty of armed robbery, in violation of 18 U.S.C., Section 2113(d). Appellant was charged with robbing the Buckeye Savings Association in Cincinnati, Ohio on January 21, 1965. Armed with a gun, Appellant went to the teller's window, handed the teller, Mardel Space, a cloth bag with a note saying "This is a holdup. Put the money in the bag. This is no joke." Mardel Space gave Appellant $1,015 in cash. On January 26, 1965, Appellant was arrested in Baltimore, Maryland.

His first trial ended on July 15, 1965 when the jury was unable to agree on a verdict; the second trial ended with the jury returning a guilty verdict.

The first issue raised by Appellant is whether he was denied the right to counsel because during the first and second trials he was removed each day to a jail in Dayton, Ohio, sixty miles from his trial in Cincinnati, Ohio. No reason was given why Appellant was taken to Dayton each day after trial. No complaint was made by Appellant's counsel until July 20, 1965, after the first trial, when a motion was filed objecting to the retention of Appellant in Dayton. Nothing was further said until the end of the Government's case. At the conclusion of the Government's case, the following colloquy between counsel and the Court is dispositive of this issue:

"The Court: Mr. Young, had this been raised prior to the commencement of this trial it would very possibly have constituted sufficient grounds for the granting of a continuance for the purpose of effecting whatever preparation was felt to be necessary. That not having been done, this Court will hold that there has been a waiver of whatever rights may have existed in that regard.

"Is it your further contention or suggestion that you have been hindered in the course of this trial by any limitation of conference rights with your client?

"Mr. Young: At this time you mean?

"The Court: During this trial that started yesterday morning.

"Mr. Young: Your Honor, I can't honestly say that because I have simply adapted myself to the situation. In other words, I see the defendant a short while before he goes to Dayton; I get here at 9:00 when he comes in, and I talk to him. Now, had he been available, it is possible that I might well have spent a longer period of time with him, but I just adapted to the situation as it was and tried to work it out on that basis.

"The Court: The record indicates your full statement. It will be the direction of the Court that for the duration of this proceedings, Mr. Morelli, that the defendant be made available at any and all times for Mr. Young's conference. By 'all times' I do not mean throughout the night.

"Mr. Morelli: Your Honor, could I protect the record on this?

"Mr. Young: Oh yes.

"Mr. Morelli: I think it's essential that I do this. Subsequent to the filing of the motion, in mid-July, Mr. Daniels was brought to the Cincinnati Workhouse and placed in confinement there so that Mr. Young could have better access in conferences there. Mr. Young advised me that he could consult with his client at all reasonable times at the Workhouse, although he wasn't too happy with the conference facilities.

"I asked Mr. Young if he would like to have his client transferred here to the Federal Building for conferences so that they would make sure there were no interferences. He and his client decided that they were dissatisfied just generally with the Workhouse facilities because they didn't think they were sufficiently comfortable. As a result of that, by agreement with Mr. Young the defendant was returned to the Montgomery County Jail.

"Again approximately ten days before the trial, arrangements were made with the Marshal to bring the defendant down here to Cincinnati so that he could consult at all reasonable times with Mr. Young during the course of last week.

"Any other times that Mr. Young has requested for conferences, at reasonable times, I am sure the Marshal will accommodate Mr. Young, any and all requests, as he had in the past; and I would like the record to show that, your Honor.

"The Court: The record now presumably reflects the entire situation, gentlemen. Certainly, Mr. Young, it

is not grounds for the dismissal of the charge of the indictment and that motion will be denied."

■ Appellant's counsel was appointed by the Court three months before the first trial. The record does not show that Appellant was denied the effective assistance of counsel. Counsel for Appellant admits he was not unduly hindered by this procedure, and we cannot find in this record that he was hindered. See Lewis v. United States, 277 F.2d 378 (C.A.10, 1960). This procedure, however, does not meet with the approval of this Court, and only under unusual circumstances should it be followed.

The second issue raised by Appellant is whether two photographs showing F.B.I. Agents in the relative positions of Defendant and the Savings and Loan employees at the time of the robbery, and two photographs showing the height of the person standing in the position occupied by Defendant, were properly admitted into evidence. During the second trial, Mardel Space identified the photograph showing the position of an F.B.I. Agent, and his height as 5′ 11″ when she gave the following testimony:

"Q. Calling your attention to a gentleman that you referred to standing in front of the counter in both of these photographs, how does the placement of this gentleman and his height compare with the placement and the height of the defendant as you recall it?

"A. Approximately the same."

The other teller, Patricia Hickenlooper, gave the same testimony. At the first trial, both tellers testified the robber was approximately 5′ 7″ tall. During cross-examination in the second trial, the tellers were questioned on their contradictory statements given to the F.B.I. and their statements given in the first trial.

■■ Photographs are admissible as long as what they purport to depict is relevant to the issues, and substantial identity to relevant times and conditions is established by oral testimony. 3 Wigmore on Evidence, Section 792 (3 Ed. 1940). If the fact to be evidenced by the photograph is itself not admissible, obviously it cannot be proved by photograph. 3 Wigmore on Evidence, Section 792.

■ Statements which are contradictory to statements given in an earlier trial or in a deposition are clearly admissible. Where a statement has already been subjected to cross-examination, as in a deposition or testimony at a former trial, testimonial statements do not violate the Hearsay Rule. 5 Wigmore on Evidence, Section 1370. Such a contradictory statement affects the weight of the testimony, not the admissibility of the testimony. On cross-examination of both Mrs. Space and Mrs. Hickenlooper, the defense fully brought out the contradictory statements. We find no prejudicial effect in the admission of the photographs, especially in light of the positive identification of the Defendant by Mrs. Space in the court room.

■ During the trial, testimony was given that prior to the robbery, Appellant was impecunious and immediately after the robbery he passed substantial sums of money. The Court charged that from these facts, an inference could be drawn, if supported by other evidence, that the money was stolen and that Appellant was connected with the robbery. Such testimony is admissible. See Hardin v. United States, 324 F.2d 553 (C.A. 5, 1963), Gill v. United States, 285 F.2d 711 (C.A.5, 1961). There was other substantial evidence from which, coupled with Appellant's poverty before the robbery, and his improved financial status after the robbery, the jury could find Appellant guilty of the crime charged.

The judgment of the District Court is affirmed.