UNITED STATES of America, Plaintiff-Appellee,

v.

Frank Dean TEAGUE, Defendant-Appellant.

No. 18066.

United States Court of Appeals, Seventh Circuit.

June 7, 1971.

116

Seymour J. Kurtz, Chicago, Ill., for
defendant-appellant.

William J. Bauer, U. S. Atty., Nicho-
las J. Etten, Asst. U. S. Atty., Chicago,

Ill., for plaintiff-appellee; John Peter Lulinski, Jeffrey Cole, Asst. U. S. Attys., of counsel.

Before HASTINGS, Senior Circuit Judge, and KILEY and KERNER, Circuit Judges.

KERNER, Circuit Judge.

Defendant, Frank Teague, appeals a jury conviction for armed robbery of Citizens Savings and Loan Association (Citizens), a federally insured savings and loan association, 18 U.S.C. §§ 2113(a) and (d). He was given the statutory maximum sentence of 25 years by the district judge.

At trial, four employees of Citizens identified Teague as the person who, on December 5, 1968, held them at gunpoint while ordering George Basta, the president of Citizens, to turn over to him the currency from the drawers of the tellers' desks. Immediately after the robbery, these witnesses gave to the F.B.I. descriptions of the robber's weight and age, which differed from those of the defendant. When on the stand at trial, however, each witness was positive that the defendant was the robber.

The defendant was also identified by Joseph Archie, who was in the process of opening up a checking account under a false name when the robber entered the building. He testified that he had observed Teague point a shotgun at a teller. Archie stated that he was directed by Teague to place the money in a briefcase. After the money was collected, Teague ordered all persons in the area into a back room.

The testimony of the other government witnesses concerned the alleged sale of a car to Teague and his girl friend, Martha McDonald, in Detroit on the day after the robbery. They stated that Teague paid for the car with currency in denominations of 5's, 10's and 20's, bound with wrappers used by financial institutions. The money taken from Citizens was likewise secured by wrappers and was of similar denominations. The address of the buyer corresponded to that of Teague's girl friend.

I.

Defendant, relying on Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), contends that the court erroneously permitted introduction of certain statements he gave to F.B.I. Agent Rene Dumaine during questioning in January, 1969. Dumaine testified that Teague was advised of his *Miranda* rights, but waived an attorney and answered some of the questions directed to him. Teague had stated that he had been unemployed for six months prior to the robbery; he also gave Dumaine the address of his residence. The address corresponded to that which was given at the purchase of the car on the day following the robbery. The government introduced these statements to show that the defendant possessed a large sum of money immediately after the robbery even though he was impecunious prior to it. The defendant's unemployment for the previous six months was evidence of his impecuniosity. A showing of a sudden increase in a defendant's wealth after an alleged robbery is admissible to prove a substantive offense involving a motive of enrichment. United States v. Crisp, 435 F.2d 354 (7th Cir. 1970).

While Agent Dumaine was on the stand, counsel for defendant objected to his testimony on the grounds that it was "irrelevant," "immaterial," and "prejudicial." It is now claimed that the trial court, in response to these objections, should have proceeded to conduct a *voir dire* on the validity of the defendant's waiver of rights during the interrogation. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). A trial court must hold a *voir dire* hearing on *Miranda* questions upon "appropriate objection" by counsel. United States v. Nielsen, 392 F.2d 849, 852 (7th Cir. 1968); United States v. Rizzo, 418 F.2d 71, 78 (7th Cir. 1969). A hearing must be ordered *sua sponte* by the judge when "[c]ertain alerting cir-

cumstances * * * may reveal a dereliction in defense counsel's failure to object to the introduction of a confession * * *." United States v. Taylor, 374 F.2d 753, 756 (7th Cir. 1967); Nance v. United States, 440 F.2d 617 (7th Cir. 1971); United States v. Reid, 410 F.2d 1223 (7th Cir. 1969). The government argues that defense counsel did not adequately apprise the court of his request for a *voir dire* hearing, and that the judge was under no obligation to order a hearing *sua sponte.*

■ We need not decide these questions because we believe that the failure to order a *voir dire,* if error, was harmless. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The statements admitted from Dumaine's interrogation of the defendant were additional evidence of defendant's guilt. The positive and undisputed identification of the defendant by the employees of Citizens, who were eyewitnesses to the robbery, constitutes sufficient evidence to sustain the jury's verdict of guilty beyond a reasonable doubt. Defendant's admissions as to his unemployment and address merely corroborate other testimony concerning defendant's participation in the purchase of the car in Detroit, introduced to show defendant's sudden acquisition of cash after the robbery. As we explained above, this sort of proof is relevant to prove defendant's guilt. Yet, his guilt was more than adequately proved by the employees who observed the defendant committing the robbery. Evidence of the purchase of the car, while helpful to the government, was not necessary to its case against the defendant.

## II.

■ The defendant raises other points of error with regard to the testimony of the purchase of the car, most of them dealing with questions of fact. For example, he claims that it was Martha McDonald who conducted the purchase and possessed the money which was turned over to the salesman. He also raises objections concerning the address

given to the dealer and the identification of him as the purchaser by the dealer. These questions were within the province of the jury, and it was not unreasonable for it to decide them against the defendant. In any event, as we found above, facts relating to this transaction were not necessary to support the verdict in light of the identification by the employees.

## III.

■ Agent Dumaine, in response to a question by defense counsel on direct examination, stated that the defendant was not placed in a lineup. On cross-examination, Dumaine explained that no lineup had been held because " * * * it was my investigative opinion that there was no doubt as to the witness' identification. * * * " Defendant now objects to this testimony, claiming that it was conclusory and invaded the jury's function to resolve the factual issue of identification.

We believe that the defendant opened the door to this testimony by questioning Dumaine about the lineup on direct examination. When Dumaine stated that he did not conduct a lineup, it was within the scope of cross-examination for the government to elicit the reasons for that decision. The defendant cannot now complain of testimony which would not have been presented if the subject of the lineup had not been raised by him on direct examination. Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L. Ed. 503 (1954); Isaac v. United States, 431 F.2d 11, 15 (9th Cir. 1970); Harris v. United States, 261 F.2d 792, 797 (9th Cir. 1958), cert. denied, 360 U.S. 933, 79 S.Ct. 1446, 3 L.Ed.2d 1546 (1959).

## IV.

The defendant complains that certain exhibits were erroneously introduced into evidence.

■ He claims that the introduction of government exhibits 1 and 2, the certificate of insurance to Citizens and the premium notice for that insurance from

the Federal Savings and Loan Insurance Corporation (FSLIC), did not comport with the admissibility requirements of the federal Business Records Act, 28 U.S.C. § 1732. Both were introduced as proof that Citizens was insured by the FSLIC at the time of the robbery, a necessary element for conviction. See 18 U.S.C. § 2113(g). George Basta, the president of Citizens at the time, testified that both the certificate and premium notice were kept and maintained in the ordinary course of business. The defendant asserts on appeal that there was no testimony that the documents were *made* in the ordinary course of business, relying on the Business Records Act, 28 U.S.C. § 1732.

■ We believe that it was sufficiently demonstrated at trial that these documents were made in the ordinary course of Citizens' business. Procuring and maintaining insurance is a fundamental and necessary business operation for institutions dealing with large sums of money. Basta's testimony that the certificate and premium notice were maintained in the ordinary course of business indicates that insurance was likewise important to this savings and loan association. The documents themselves contain nothing which detract from their authenticity. We are satisfied that this evidence fulfils the admissibility requirements. The person who makes the records need not testify " * * * if a person does testify who is in a position to attest to the authenticity of the records." United States v. Dawson, 400 F.2d 194, 199 (2d Cir. 1968), cert. denied 393 U.S. 1023, 89 S. Ct. 632, 21 L.Ed.2d 567 (1969); United States v. Skiba, 271 F.2d 644, 646 (7th Cir. 1959), cert. denied 362 U.S. 924, 80 S.Ct. 678, 4 L.Ed.2d 743 (1960); Cullen v. United States, 408 F.2d 1178 (8th Cir. 1969); United States v. Grow, 394 F.2d 182, 205 (4th Cir. 1968).

■ Defendant also asserts that government exhibit 3, a photograph depicting the tellers' windows at Citizens, was improperly admitted because it did not accurately depict the site at the time of the robbery. A teller testified that the photograph accurately portrayed the scene as it was on the date of the robbery. From this, the jury could better understand the relative location of the defendant and the witnesses during the robbery. There is no doubt that the proper foundation for the photograph's admission had been established. United States v. Daniels, 377 F.2d 255, 258 (6th Cir. 1967).

■ We also reject defendant's argument that photocopies of certain documents dealing with the purchase of the car were erroneously admitted into evidence. There was sufficient foundation testimony that these documents were made, kept and photocopied in the regular course of business. This satisfies the requirements for admissibility of photocopies under 28 U.S.C. § 1732(b).

## V.

■ The defendant asserts that one of the instructions read to the jury relating to the definition of "savings and loan association" failed to include an essential element of the crime for which he was convicted. Section 2113 requires that the victim of the robbery be a savings and loan association as defined in § 2113(g) of that title which states:

> As used in this section the term "savings and loan association" means * * * any "insured institution" as defined in section 401 of the National Housing Act * * *.

Section 401 of the Housing Act, 12 U.S.C. § 1724, defines an "insured institution" as one "whose accounts are insured under this subchapter." An examination of the subchapter discloses the "insured institution" to be the Federal Savings and Loan Insurance Corporation (FSLIC).

The instruction which defendant claims is fatally defective reads:

> As used in this section [Title 18, United States Code, Section 2113] the term "savings and loan association" means any savings and loan association the accounts of which are insured

by the Federal Savings and Loan Association.

Defendant finds two errors in this instruction. First, he claims that the instruction was not a verbatim recital of § 2113(g), since it did not make specific reference to § 401 of the Housing Act. We find, however, that a literal reading of the technical language of the sections involved was not required, and, in fact, might have proved confusing to the jury had it been included in the instruction. Bass v. United States, 324 F.2d 168, 171 (8th Cir. 1963); Costello v. United States, 255 F.2d 389, 397 (8th Cir. 1958), cert. denied Cannella v. United States, 358 U.S. 830, 79 S.Ct. 51, 3 L. Ed.2d 69; United States v. Capitol Meats, 166 F.2d 537 (2d Cir. 1948), cert. denied 334 U.S. 812, 68 S.Ct. 1018, 92 L.Ed. 1743. It was proper for the judge to avoid a tortuous reading to the jury of all the relevant statutory sections involved in this phase of the case. Since all the elements of the crime prohibited by §§ 2113(a) and (d) were included in the instructions, we do not believe it was mandatory for the judge to state additionally that § 2113(g) refers to § 401 of the Housing Act.

■ The defendant also points out that the instruction erroneously referred to the insurer institution as the "Federal Savings and Loan Association" rather than the Federal Savings and Loan Insurance Corporation. Admittedly, this reference in the instruction was incorrect. Nevertheless, we do not believe that this inadvertence so prejudiced the defendant's case as to require reversal. United States v. Rizzo, 409 F.2d 400, 402–404 (7th Cir. 1969), cert. denied 396 U.S. 911, 90 S.Ct. 226, 24 L.Ed.2d 187. The indictment, which correctly refers to the FSLIC, was read to the jury along with the instructions. The jury also had before it the Certificate of Insurance and the insurance premium notice which on their face bear the name of the FSLIC. The existence of the insurance was adequately demonstrated and was not challenged by the defense at trial. Thus, the harm, if any, caused to the defendant by the mistake was minimal and, in no way, constitutes prejudicial error. Ryan v. United States, 278 F.2d 836, 839–840 (9th Cir. 1960); United States v. Salliey, 360 F.2d 699, 702–703 (4th Cir. 1966).

## VI.

■ Prior to trial, the Assistant United States Attorney stated to the judge, in the presence of defense counsel:

> I spoke to [defense counsel] * * * earlier this week, and I stated * * * that * * * approximately 30 minutes prior to the robbery of this particular bank, the Citizens Savings & Loan, that there was a robbery of a postal substation in the area of the robbery of the bank. I stated * * * that the modus operandi of the individual who robbed the postal substation was similar to that of the person who robbed the savings & loan institution.

Defense counsel requested that the government turn over all the information concerning the postal substation robbery but was refused. It is now claimed that the government's failure to supply the defendant with this information violated the precepts of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which held that the suppression by the prosecution of evidence favorable to the defense is a violation of due process.

The defendant posits two reasons why evidence of the substation robbery would have been favorable to him. He first states that "[i]f someone other than the defendant robbed both the post office and Citizens, those who witnessed that man's appearance might testify on behalf of this defendant, denying that he robbed the institutions." Defendant erroneously assumes that if there is no proof that he robbed the substation, then it could not be shown that he

robbed Citizens. Implicit in defendant's argument is that evidence exculpating defendant from involvement in the substation robbery would persuade the employees of Citizens that their positive and uncontradicted identification of the defendant was incorrect. Yet, none of the substation witnesses had known nor could testify that defendant did not rob Citizens. Evidence concerning his lack of involvement in the substation robbery is totally immaterial to the issue of the robbery of Citizens.

Secondly, the defendant argues that "[i]f the witnesses who observed that post office robbery were to identify the defendant and if the robbery of the post office and Citizens occurred at the same time, such testimony would afford an alibi of the charges defendant here faced." We need only state in answer to this contention that if defendant did, in fact, rob the substation, he would be in as good a position as any to supply his counsel with information and would not need the government's data.

Thus defendant has not shown to us any possible prejudice by the suppression of evidence concerning the substation robbery. United States v. Trainor, 423 F.2d 263 (1st Cir. 1970); Levin v. Clark, 133 U.S.App.D.C. 6, 408 F.2d 1209 (1967). See United States v. Poole, 379 F.2d 645 (7th Cir. 1967). It could, in no way, devalue the strong case the government had proved against him. Under any interpretation of the information concerning the substation, we do not believe that it was material nor that it would have led the jury to entertain a reasonable doubt about the defendant's guilt. Levin v. Clark, *supra,* 408 F.2d at 1212.

### VII.

The defendant launches an attack on the imposition of a sentence of 25 years in prison, the statutory maximum under § 2113. At the sentencing hearing, the Assistant United States Attorney repeated the representations concerning the substation robbery. He also indicated to the court the prior criminal convictions of the defendant, all misdemeanors. The trial judge, after deciding that a pre-sentence report was not necessary, stated:

We have here a very serious crime. There is no question in the Court's mind, having heard all of the testimony, and apparently there was no question in the jury's mind. The verdict was brought in here at about 6:00 o'clock finding the defendant guilty of the charges in the indictment.

This man entered the bank with a sawed-off shotgun, was positively identified by five people as the one who committed the act, and in the course of that he threatened to shoot and kill a number of the parties there. That threat was also given to the other man who was in the bank, and he was forced to aid and assist him. He had all of these parties herded into a back room, and the defendant here completed it, proceeded to leave and go to Detroit where it was shown he apparently used part of the funds to purchase an automobile, and this is not a matter that the Court can take lightly.

This man, in my opinion, is not a fit member of society. I do not know whether he can ever be rehabilitated. If we were to countenance a crime of this nature and not impose a severe penalty, it would just be an invitation to others to do it, and there is altogether too much in the way of bank robbery going on, not only here but throughout the whole country, and the Court must and has the responsibility of imposing a sentence that will act as a deterrent to the others.

After having considered all of the evidence in this case, the Court is of the opinion that the maximum sentence of twenty-five years should be

imposed, and that will be the order of the Court.

The defendant contends that the judge erroneously considered deterrence as a factor in sentencing. He also complains that improper reliance was placed on the facts concerning the substation robbery, exact information of which was denied him by the government in violation of Brady v. Maryland, *supra.*

■ We need not decide the propriety of these sentencing factors since we find that the sentence was adequately supported by other valid considerations. United States v. Levine, 372 F.2d 70, 73–74 (7th Cir. 1967). The judge, in his statement, relied on the violent aspects of the crime. Also before the court was the defendant's prior misconduct occurring within three years of his robbery of Citizens. These were sufficient grounds to justify the length of the sentence, which lies within the particular discretion of the trial judge.

■ We also reject defendant's claim that the trial court was in error in refusing to order the preparation of a pre-sentence report. The ordering of a pre-sentence report is within the discretion of the court. United States v. Hutul, 416 F.2d 607, 627 (7th Cir. 1969), cert. denied 396 U.S. 1012, 90 S.Ct. 573, 24 L.Ed.2d 504 (1970); Rule 32(c), Fed.Rules Crim.Proc. While we believe it to be the better practice for judges to consider information in pre-sentence reports, we do not believe there was an abuse of discretion in refusing to allow the preparation of one in this case. The judge, after giving defense counsel an opportunity to state facts in mitigation, took into consideration factors which justify the sentence. Thus, defendant has failed to demonstrate the prejudice to him resulting from the refusal to order a pre-sentence report.

For the foregoing reasons, we affirm the conviction.

Affirmed.