902 F.2d 35
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-appellee,
v.
Gerald DUVAL, Jr., Defendant-appellant.
 No. 89-1891.
 United States Court of Appeals, Sixth Circuit.
 April 26, 1990.
 
 Before RALPH B. GUY, Jr., and ALAN E. NORRIS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant Gerald Duval, Jr., appeals his conviction for conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. Sec. 846, possession with intent to distribute cocaine in violation of 21 U.S.C. Sec. 841(a)(1) and criminal forfeiture, 21 U.S.C. Sec. 853.
 
 I.
 
 2
 Defendant-appellant Gerald Duval, Jr., was charged on August 21, 1988, in a multi-count indictment. On March 29, 1989, appellant went to trial on a redacted second superceding indictment on two counts. Count one charged him with conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. Secs. 846 and 841(a)(1); count two, with intent to distribute an amount greater than 500 grams but less than 5 kilograms of cocaine in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2. Count seventeen of the second superceding indictment sought forfeiture of the residence at 20277 Ida Center Road pursuant to 21 U.S.C. Sec. 853.
 
 
 3
 On April 4, 1989, a jury found appellant guilty on counts one and two and the property subject to forfeiture on count seventeen. At trial the following testimony was given:
 
 
 4
 In late 1984 John McNutt developed a cocaine supply source which originated in Columbia and was routed through the Bahamas to southern Florida. He began selling multi-kilogram quantities of cocaine to Jerry Milam and Kenneth Hopson of Monroe County, Michigan. Milam sold the cocaine to various persons including Dennis Lamley, who in turn sold cocaine to his own customers including the appellant Gerald Duval. Duval would then sell cocaine to his own customers. In the summer of 1985, Milam agreed with Duval to provide him with cocaine at a lower price as Duval was unhappy with the quality of cocaine he received from Lamley. From 1985 to 1987 Milam in this way supplied Duval with between 100 to 200 kilograms of cocaine and received a total of about one million dollars in cash from him.
 
 
 5
 By the summer of 1987, McNutt stopped supplying Milam with cocaine because of Milam's failure to pay a $90,000 debt and McNutt arranged to supply Duval with cocaine directly. Duval paid McNutt $40,000 for the right to make future cocaine purchases and in January 1988, he travelled to southern Florida where he purchased two kilograms of cocaine from McNutt for $34,000. He visited McNutt again to make an additional purchase, but McNutt refused, explaining that Kenneth Hopson had been arrested, making him mistrustful of further drug activity.
 
 
 6
 On August 16, 1988, a search of appellant's home produced a scale of the type commonly used to weigh narcotics and between $6,000-$7,000 in cash.
 
 
 7
 After trial, appellant made a motion to set aside the jury verdict, alleging that the prosecutor had been vindictive in refusing to accept a pre-guideline plea agreement, or, in the alternative, to be sentenced according to a pre-guideline plea agreement. The district court denied this motion. On July 20, 1989, defendant was sentenced to concurrent terms of seven years on count one and five years on count two. Appellant timely filed this appeal. Appellant does not raise the issue which he addressed in his motion to set aside the jury verdict on appeal. He raises matters to which he objected at trial.
 
 II.
 
 8
 First, appellant alleges that he was denied a fair trial due to the cumulative effect of improper prosecutorial conduct on three occasions during the trial: the prosecutor's eliciting testimony that a witness was in the witness protection program; a witness's response on cross-examination by defense counsel that he had taken a polygraph examination; and the prosecutor's comments in his rebuttal argument about facts not in evidence.
 
 
 9
 Assertions of prosecutorial misconduct are judged according to the following standard: "[t]he relevant question is whether the [misconduct] 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)). To warrant a new trial, prosecutorial misconduct "must be so pronounced and persistent that it permeates the entire atmosphere of the trial." United States v. Vance, 871 F.2d 572, 577 (6th Cir.), cert. denied, 110 S.Ct. 323 (1989).
 
 A.
 
 10
 Appellant alleges that the prosecutor's question to witness Hopson about his participation in the witness protection program amounted to a representation that Hopson was a credible witness because he was worthy of protection and also suggested that appellant had threatened the witness.
 
 
 11
 Appellee argues that the prosecutor explained that his intention was proper--he wanted to diffuse appellant's anticipated attack on the witness's plea agreement by fully revealing all the terms of the witness's agreement with the government. Moreover, the more logical inference was that the witness was being threatened by Columbian drug lords than that he perceived himself threatened by defendant.
 
 
 12
 The test for improper vouching is "whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility." United States v. Causey, 834 F.2d 1277, 1283 (6th Cir.1987), cert. denied, 108 S.Ct. 2019 (1988). Vouching can occur either by the government's personal assurances of a witness's veracity or by alluding to evidence outside the record as supporting the witness's testimony. United States v. Wallace, 848 F.2d 1464, 1473 (9th Cir.1988). We do not find that reference to witness Hopson's participation in the witness protection program amounted to improper vouching by the prosecution warranting a new trial. In United States v. Adamo, this court rejected the argument that reference to a witness protection program amounted to a representation that a witness was credible because he was worthy of protection. 742 F.2d 927, 944 n. 23 (6th Cir.1984), cert. denied, 469 U.S. 1193 (1985). Although the court disapproved of the reference, the court declined "to announce a hard and fast rule" on this issue. Id. at 945. This court has also rejected the challenge that reference to a witness protection program suggests threats by the defendant. United States v. Licavoli, 725 F.2d 1040, 1050-51 (6th Cir.), cert. denied, 467 U.S. 1252 (1984).
 
 
 13
 In the present case, appellant objected to the reference on the ground that it was irrelevant and the objection was sustained. The trial court immediately instructed the jury to disregard the response. Any slight prejudice accruing to this remark was neutralized by the court's cautionary instruction to the jury. The passing reference to the program is incapable of producing the prejudice complained of by appellant and does not constitute prosecutorial misconduct that denies appellant his due process right to a fair trial.
 
 B.
 
 14
 Appellant next alleges that prejudicial error occurred because in response to a question by defense counsel, witness Hopson indicated that he had passed a polygraph test, which indicated that he did not use threats to collect drug money. Appellant contends that this inadvertent admission of inadmissible evidence constituted prosecutorial misconduct. However, appellant did not object to this statement before the district court or ask that the statement be stricken as nonresponsive. He thus waived his right to raise this issue on appeal, absent plain error.[1] United States v. Baker, 807 F.2d 1315, 1321 (6th Cir.1986). Under the plain error doctrine, Fed.R.Crim.P. 52(b), only "those errors that 'seriously affect the fairness, integrity or public reputation of judicial proceedings' " are recognized. United States v. Young, 470 U.S. 1, 15, (1985) (citation omitted). A reversal is warranted only in "those circumstances in which a miscarriage of justice would otherwise result." Id.
 
 
 15
 No plain error occurred because the offending testimony was made in response to a question by defense counsel, not by the prosecutor. Appellant's allegation that the prosecutor should have instructed his witness on this issue and kept his witness under more strict control is without merit. Prosecutorial misconduct is not implicated in this situation. Cf. United States v. Kiszewski, 877 F.2d 210, 216-17 (2nd Cir.1989) (reference to polygraph test in response to question posed by court does not present a claim of prosecutorial misconduct and is harmless error). Moreover, appellant cannot demonstrate any prejudice from the remark because FBI agent Piccirillo directly contradicted Hopson's testimony that he had threatened no one and in his closing argument, the prosecutor conceded that Hopson was lying when he denied making any threats.
 
 C.
 
 16
 In regard to prosecutorial misconduct, appellant finally contends that the prosecutor argued facts outside the record in order to bolster the credibility of his witnesses in his rebuttal argument.
 
 
 17
 First, in the course of his rebuttal argument to the jury, the prosecutor made the following comment on "demeanor evidence" concerning the witnesses.
 
 
 18
 PROSECUTOR: ... whether you liked them or not, you had to admit that they had the demeanor of somebody who is being truthful with you.
 
 
 19
 Milam, the same thing. Look at his testimony. He was crying as he walked out of the courtroom. He wasn't crying because he had to lie.
 
 
 20
 DEFENSE COUNSEL: Your Honor. That's not a fact.
 
 
 21
 THE COURT: I don't think that's a fact in evidence, Mr. Miller. The jury will disregard that statement.
 
 
 22
 At the close of the argument, defense counsel moved for a mistrial or in the alternative for a cautionary instruction. The mistrial was denied and the district court instructed the jury as requested by defendant as follows:
 
 
 23
 I want to tell you that whether or not Mr. Milam was crying after he left the witness stand is irrelevant. It's something you should disregard.
 
 
 24
 The second instance to which appellant objects also occurred during rebuttal. During his closing argument, defense counsel emphasized that when appellant's home was searched at the time of his arrest, no narcotics were found. The prosecutor responded:
 
 
 25
 Be careful, too, about this notion that there were no seizures in this case. There were no seizures from John McNutt. Does that mean he's not guilty? There were no seizures from--
 
 
 26
 DEFENSE COUNSEL: I'll object, your Honor. There's no evidence as to that.
 
 
 27
 THE PROSECUTOR: There is no evidence that there were no seizures.
 
 
 28
 The prosecutor conceded that there had been no evidence concerning seizures at McNutt's residence and at the request of defense counsel the court gave a curative instruction in its final charge to the jury:
 
 
 29
 THE COURT: With regard to Mr. McNutt, the only evidence regarding Mr. McNutt is that which you saw or heard in the courtroom.
 
 
 30
 The Supreme Court has held that inappropriate prosecutorial comments standing alone do not justify the reversal of a criminal conviction obtained in an otherwise fair proceeding. United States v. Young, 470 U.S. at 11-12. A court must consider "the probable effect the prosecutor's response would have on the jury's ability to judge the evidence fairly." Id. at 12. Factors to consider are the degree to which the alleged remarks may mislead and confuse the jury; the strength of the proof against defendant; whether the remarks are isolated or extensive; whether they are deliberate or accidental; whether objections are made; and whether the trial court admonishes the jury with corrective instructions. Angel v. Overberg, 682 F.2d 605, 608 (6th Cir.1982); United States v. Bess, 593 F.2d 749, 757 (6th Cir.1979); United States v. Leon, 534 F.2d 667, 679 (6th Cir.1976).
 
 
 31
 In the present case although the prosecutor did initially argue facts not in evidence, in regard to the lack of drug seizures from John McNutt's home, the prosecutor immediately acknowledged his error. In the instance regarding witness Milam's demeanor, the court first gave a specific curative instruction and then a more general instruction in its charge to the jury. Moreover, any alleged error was harmless as there was substantial evidence of defendant's guilt. Hopson, McNutt, Milam, Diver and Clark directly and indirectly linked appellant to the cocaine conspiracy. We find that in the context of the record as a whole, these alleged improprieties of the prosecutor were isolated, not pervasive, and of no great significance. Paprocki v. Foltz, 869 F.2d 281, 288 (6th Cir.1989); United States v. Ashworth, 836 F.2d 260, 267 (6th Cir.1988).
 
 
 32
 The cumulative effect of any alleged prosecutorial misconduct does not warrant a new trial as there is no evidence of misconduct which was so pronounced that it permeated the atmosphere of the entire trial. For this reason, the judgment of the district court on this issue is affirmed.
 
 III
 
 33
 We must next consider whether the trial court abused its discretion in allowing evidence of defendant's sudden unexplained wealth.
 
 
 34
 Appellant argues that under the pretext of its "swollen assets theory" concerning appellant's wealth, the prosecution was allowed to introduce evidence of Duval's extramarital affair with Lisa Clark in order to label him as an immoral man in violation of Federal Rule of Evidence 404(b), which prohibits the use of evidence of wrongs or bad acts in order to prove the character of a person.[2]
 
 
 35
 Appellee argues that Lisa Clark, the alleged girlfriend of Duval, testified in order to demonstrate that for a five-month period of time in 1987, appellant made substantial cash outlays, paying $600 a month for an apartment for Ms. Clark, purchasing furniture for the apartment, and giving her approximately $100 per week spending money. Appellee argues that this evidence was relevant because during a tax year when appellant reported only $5,000 in income to the IRS, he made cash outlays of over $7,000 for the benefit of a third party. The government maintained that appellant's possession of unexplained wealth was another factor from which the jury could infer that appellant, who was accused of being in a business in which the motive is money and the commodity usually dealt with is cash, received this money from his participation in illegal drug activities.
 
 
 36
 We find that this evidence was not improper character evidence admitted to demonstrate appellant's bad acts, but was evidence admitted for other purposes; in this case, it was relevant to the offense charged. This court has consistently held that sudden unexplained wealth occurring after the commission of an offense is admissible evidence. United States v. Ingrao, 844 F.2d 314, 316 (6th Cir.1988); United States v. O'Neal, 496 F.2d 368, 370-71 (6th Cir.1974); United States v. Amerine, 411 F.2d 1130, 1132 (6th Cir.1969); United States v. Daniels, 377 F.2d 255, 258 (6th Cir.1967).
 
 
 37
 Under Federal Rule of Evidence 403, the district court must determine if the prejudicial effect of relevant evidence outweighs its probative value. The district court has broad discretion in the admission of evidence and the reviewing court may reverse only upon a finding of an abuse of discretion. United States v. Zipkin, 729 F.2d 384, 389 (6th Cir.1984). In the instant case, the district court determined that the evidence was not excessively inflammatory and was highly probative of appellant's unexplained wealth. We find no abuse of discretion and affirm the decision of the district court to admit this evidence.
 
 IV
 
 38
 We must next determine whether the trial court abused its discretion in allowing evidence of defendant's sale of drugs during the time-frame of the conspiracy.
 
 
 39
 Appellant contends that the trial court erred in admitting Dan Diver as a witness for the prosecution. Diver testified that he worked on the construction of Gerald Duval's house at 20277 Ida Center Road in 1985 and purchased cocaine in small quantities from Duval approximately ten times. Appellant contends that the testimony was outside the scope of the charges in the indictment and was evidence of other crimes, which violated Federal Rule of Evidence 404(b).
 
 
 40
 We find no merit in this argument. Appellant was charged with conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. Sec. 846. The alleged sales of cocaine to Dan Diver in 1985 occurred within the time-frame of the conspiracy. Evidence which is probative of the crime charged and does not solely concern uncharged crimes is not "other crimes" evidence. United States v. DeLuna, 763 F.2d 897, 913 (8th Cir.), cert. denied, 474 U.S. 980 (1985). The testimony of Diver revealed that Duval had customers to whom he could sell the drugs he obtained and that he committed an overt act in furtherance of the conspiracy with which he was charged. For this reason, the decision of the district court to admit the testimony of Diver is affirmed.
 
 V
 
 41
 Finally appellant argues that the indictment and instruction and interrogatories to the jury concerning the forfeiture of a house which he allegedly had built during the summer of 1985 were defective because they did not specify the extent of appellant's ownership in the property, which appellant alleges was owned by his parents. Appellant contends that Federal Rule of Criminal Procedure (FRCP) 7(c)(2), which requires that "no judgment of forfeiture may be entered in a criminal proceeding unless the indictment or the information shall allege the extent of the interest or property subject to forfeiture," (emphasis added) was violated because the indictment, instructions and interrogatories did not specify the extent of the ownership interest which appellant had in the property.
 
 
 42
 Appellant failed to make this argument before the district court and thus has waived his right to raise this issue on appeal, absent plain error. No plain error occurred because appellant misconstrues FRCP 7(c)(2). The plain language of Rule 7(c)(2) requires only that the extent of the interest or property subject to forfeiture be alleged (emphasis added). That condition was satisfied in the instant case because the second superceding indictment announced that the government would seek any interest which appellant had in the real property at 20277 Ida Center Road. The property was identified in the indictment as:
 
 
 43
 20277 Ida Center Road, Petersburg, Michigan 49270, said property being more fully identified as the east 429 feet of the north 693 feet of the northwest quarter of the northeast quarter of Section 19, Town 7 Sough, Rouge 5 east as recorded in Liber 986 of Plats, Page 897 Register of Deeds, Monroe County, Michigan.
 
 
 44
 We find that the language of the indictment clearly identified the property and was sufficient to put Duval on notice that the entire house was subject to forfeiture. United States v. Possick, 849 F.2d 332, 340-41 (8th Cir.1988) (claim that indictment and special verdict form were defective because they did not specify defendant's interest in property that was allegedly jointly owned by wife fails as indictment clearly identified property); United States v. Cauble, 706 F.2d 1322, 1347 (5th Cir.1983) ("[b]arebones pleading" suffices as long as defendant is put on notice that the government seeks forfeiture of a particular property), cert. denied, 465 U.S. 1005 (1984); United States v. Boffa, 688 F.2d 919, 939 (3d Cir.1982) (by alleging that all of appellants' interest in enumerated property was subject to forfeiture, the indictment alleged the "extent of the interest or property subject to forfeiture"), cert. denied, 460 U.S. 1022 (1983); United States v. Grammatikos, 633 F.2d 1013, 1024 (2d Cir.1980) (principal objective of Rule 7(c)(2) is met if person facing charges is given notice that forfeiture will be sought).
 
 
 45
 Appellant's reliance on United States v. Estevez, 845 F.2d 1409, 1411-12 (7th Cir.1988) is misplaced as Estevez dealt with an allegedly true owner's failure to file a timely third-party response to the government's action for forfeiture of any interest that the defendant held in the property. In the present case, appellant was not prejudiced by lack of notice as the property deemed susceptible to forfeiture was fully identified in the indictment. Therefore, no plain error occurred.
 
 
 46
 For the reasons stated above, the judgment of the district court is affirmed.
 
 
 
 [1]
 In the alternative, appellant alleges that failure to object was ineffective assistance of counsel. The issue of ineffective assistance of counsel may not be raised for the first time on appeal. United States v. Swidan, 888 F.2d 1076, 1081 (6th Cir.1989)
 
 
 [2]
 Appellant also contends that admission of this evidence violated Federal Rules of Evidence 403, 608 and due process of law